PEOPLE v VALOPPI

1. CRIMINAL LAW—EVIDENCE—LIKE ACTS—OTHER CRIMES—MOTIVE—
   INTENT—STATUTES.

   A prosecutor is allowed to introduce evidence of "like acts" of a
   defendant in order to show motive, intent, or lack of mistake,
   even though this evidence may tend to show the commission of
   other crimes (MCLA 768.27).

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESERVING QUESTION—
   WAIVER.

   Failure of a defendant to renew, at the time the jury was
   instructed, his request for an instruction on the limited use of
   evidence of similar bad acts, after having sought such an
   instruction when the evidence was introduced, waives any error
   resulting from the court's failure to give the instruction.

3. CRIMINAL LAW—IMPEACHMENT—PRIOR OFFENSES—PRIOR ARRESTS.

   A prosecutor may not impeach a defendant by specific reference
   to his arrest on another charge; however, a defendant was
   properly asked on cross-examination whether he was involved
   in another offense similar to that for which he was on trial
   where no mention was made of an arrest or pending charge in
   the other offense.

4. CRIMINAL LAW—CONSTITUTIONAL LAW—DEFENDANT AS WITNESS—
   RIGHT AGAINST SELF-INCRIMINATION—WAIVER OF RIGHT.

   A criminal defendant who chooses to take the witness stand
   waives his right against self incrimination as to any matter
   already at issue; therefore, a question asked a defendant about
   a prior transaction similar to the one for which he was on trial
   was proper and the defendant was required to answer where
   the question was designed to show that the defendant had the

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 320 *et seq.*
[2] 75 Am Jur 2d, Trial § 593.
[3] 75 Am Jur 2d, Trial § 269.
[4] 21 Am Jur 2d, Criminal Law §§ 357–359.
[5] 68 Am Jur 2d, Searches and Seizures § 16.

requisite intent, had made no mistake, and had had prior dealings with the same party. (US Const, Am V).

5. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—AUTOMOBILES—
   VEHICLE IDENTIFICATION NUMBERS.
   An inspection of an automobile to determine the vehicle identification number is not a search within the meaning of the Fourth Amendment (US Const, Am IV).

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 March 11, 1975, at Detroit. (Docket No. 20757.) Decided May 30, 1975. Leave to appeal denied, 394 Mich 839.

Peter Valoppi was convicted of receiving or concealing stolen property over the value of $100. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *John J. Bianco,* Assistant Prosecuting Attorney, for the people.

*Edward A. Khoury,* for defendant.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and D. F. WALSH, JJ.

J. H. GILLIS, J. On March 20, 1972, a grand jury indicted defendant for possessing a stolen car with intent to procure or pass title, MCLA 257.254; MSA 9.1954 (count 1), and for receiving or concealing stolen property over the value of $100, MCLA 750.535; MSA 28.803 (count 2). On October 6, 1972, a Wayne County Circuit Court jury convicted defendant on count 2, and for lack of jury unanimity, a mistrial was declared on count 1. On November 20, 1972, Valoppi was sentenced to a jail term of 2-1/2 to 5 years. He appeals as of right.

A detailed recitation of the fact situation is

necessary for an understanding of defendant's arguments on appeal. On October 8, 1971, the Lincoln Park Police received an anonymous telephone tip. The caller informed police that a white male, driving a white-over-red Lincoln Continental, license number JVH 602, would be transacting a narcotics sale in a certain restaurant parking lot later that afternoon. Acting on this information, the police arrested one Lou Perell outside the restaurant. A search of the car revealed both a quantity of marijuana and a pistol. Perell was able to produce a registration which correctly indicated the license plate number and the public vehicle identification number (PVIN).[1] The registration listed the auto's owner as the Auto City Leasing Co. on Grand River in Detroit. A LEIN[2] check run by the police indicated the car was stolen. Perell was then arrested. Subsequent location of the hidden VIN[3] by a police auto theft expert revealed the true owner of the car to be the McCullough Leasing Company. The car had been stolen from McCullough sometime earlier.

At trial Perell testified that he and defendant Valoppi had been friends for a couple of years. He further testified that defendant told him that he could get him "a good deal" on a leased car.

---

[1] *United States v Polk,* 433 F2d 644, 645 (CA 5, 1970), provides a good description of what a Vehicle Identification Number is: "The PVIN [public vehicle identification number] appears on a removable plate, usually attached to the front left door post of a car. The plate contains digits designating the manufacturer, model and year of the car. Tne last six digits constitute the serial number of the car, known as the true vehicle identification number (TVIN). The TVIN is also found stamped into the metal parts of the car in a number of locations, for instance just behind the radiator and on the rear axle."

[2] The Law Enforcement Information Network (LEIN) is a centralized information system which allows police to call in and quickly receive pertinent data from a computer. The police must rely on the information received, as there is no way for them to immediately ascertain its veracity.

[3] *See* n 1, *supra.*

Valoppi claimed that he had been offered a two-year lease on a Continental for $2,500, but that he (defendant) was unable to afford it. Since he could not afford it himself, Valoppi was willing to procure this bargain for Perell. Perell agreed; he paid Valoppi $2,500 cash and received the Continental and registration in question. Perell received no receipt of any type. Defendant did not indicate to Perell that the car was stolen.

Police investigations revealed that Auto City Leasing Co. was nonexistent. Instead, there was a rather large-scale car theft ring using this nonexistent leasing company as a front to sell stolen Continentals. The record indicates that this ring was probably run by one Eugene Cole. The record further indicates that this ring had employees in both the Secretary of State office and the Ford Motor Company factories, thus making it possible for them to procure false registrations and VIN plates.

When Peter Valoppi testified at trial, he claimed that he knew Eugene Cole as a businessman involved in the automobile leasing business. Cole offered him a good deal on a leased Continental, but defendant did not have the necessary $2,500. Subsequently, defendant offered the same opportunity to Perell, and Perell accepted. Defendant denied that he had anything to do with the Auto City Leasing Co. He denied stealing the car; he denied that he knew it was stolen. He claimed the one lease transaction involving Perell was the only business dealing he had with Eugene Cole.

On appeal, defendant contends that the prosecution's introduction of evidence of similar bad acts on defendant's part denied him a fair trial. We disagree. In Michigan, the prosecution is allowed to introduce "like acts" of defendant in order to

show motive, intent, or lack of mistake, even though this evidence may tend to show commission of other crimes. MCLA 768.27; MSA 28.1050,[4] *People v Wood,* 44 Mich App 99; 205 NW2d 66 (1972). In the instant case, defendant was charged with possessing stolen property, a specific intent crime. *People v Keshishian,* 45 Mich App 51; 205 NW2d 818 (1973). His defense was that he was unaware that the car was stolen, that he was an innocent party duped by Eugene Cole. The prosecutor was allowed to rebut this defense by showing defendant's prior acts involving other stolen cars, and defendant's other transactions with Eugene Cole. He did not do so in such a manner as to deprive defendant of a fair trial.

Defendant also assigns as error the trial judge's failure to give the jury an instruction on the limited use of evidence of similar bad acts. The lower court record and stipulations make it unclear whether such instruction was ever requested. Defendant claims that after this evidence was introduced, he sought the instruction. Assuming this to be true, we hold that his failure to renew his request at the time the jury was instructed waives any error. *People v Stinson,* 58 Mich App 243; 227 NW2d 303 (1975), 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 566.

Defendant also claims the following question,

---

[4] MCLA 768.27; MSA 28.1050, reads as follows: "In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

asked him on cross-examination, constitutes reversible error:[5]

> *"Mr. Bianco:* Mr. Valoppi, did you not, along with the man who is referred to here as Gene Cole, sell a car you knew to be stolen, and Mr. Cole knew to be stolen, to a Mr. Joseph Lucci?
>
> *"Mr. Khoury* [Defense counsel]: That question is objectionable, besides the constitutional grounds, because it now places upon this defendant—aside from the prejudicial effect on him, it places him in the position of passing on what is in Mr. Cole's mind at one time.
>
> *"The Court:* Rephrase the question.
>
> *"Mr. Bianco:* Did you sell or have occasion to sell to a Mr. Joseph Lucci a Lincoln automobile, which you sold jointly with Mr. Cole, and which you knew to be a stolen automobile?
>
> *"The Witness:* May I have the question read?
>
> (Question read.)
>
> *"The Witness: I refuse to answer that on the grounds it may incriminate me."* (Emphasis supplied.)

Defendant's objection is twofold. He first contends that this question is impermissible under *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972), because it referred to an offense which defendant had been charged with, but not yet convicted of. He further argues that defendant may not be forced to exercise his Fifth Amendment rights in front of the jury.

*People v Eddington, supra,* dealt with a situation where the prosecutor attempted to impeach defendant by specific reference to defendant's arrest on another murder charge. In the instant case, no reference was made to the fact that defendant had been arrested or charged in another car theft case.

---

[5] The record reveals that defense counsel, outside of the jury's presence, informed the trial judge that if the prosecutor's question was sustained, defendant would be forced to assert his Fifth Amendment rights. The trial judge was unmoved.

We find this distinction critical. The underlying rationale of *Eddington, supra,* is that in a legal system where defendant is presumed innocent until proven guilty, the mere fact that he has been arrested on another charge is of little, if any, probative value. On the other hand, there is a strong possibility that a jury will place undue emphasis on the fact that the state has chosen to take action against the defendant in another case. When the possible prejudice is weighed against the probative value of this prior arrest, "the scales tip in favor of exclusion". *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). Since no mention of arrest or pending charge was made in the instant case, we find no error under *Eddington, supra.* See also *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973).

Defendant's second contention, that he may not be forced to invoke his Fifth Amendment right in front of the jury, is likewise without merit. When a defendant in a criminal trial chooses to take the stand, he waives his Fifth Amendment rights, at least as to any matter already at issue. *Johnson v United States,* 318 US 189; 63 S Ct 549; 87 L Ed 704 (1943), *Brown v United States,* 356 US 148; 78 S Ct 622; 2 L Ed 2d 589 (1958), *People v Johnson,* 382 Mich 632; 172 NW2d 369 (1969). In this case, on direct examination, defendant testified that he did not know that the car at issue was stolen, and that he had only engaged in one transaction involving Mr. Cole. The trial judge was within his discretion in allowing the prosecutor to question defendant about this other transaction because the question was aimed at showing that defendant did have the requisite intent, that he made no mistake, and that he had engaged in other transactions with Mr. Cole. *Cf. Johnson v United States,*

*supra.* Since the question was proper, defendant was required to answer. If he felt compelled to assert his Fifth Amendment rights, he must live with his choice. As the United States Supreme Court in *Brown,*[6] *supra,* held:

"[The accused] has the choice, after weighing the advantages of the privilege against self-incrimination against the advantages of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell."

Defendant next alleges that he was entitled to an evidentiary hearing in order to show that the information placed on the LEIN machine was obtained through an earlier illegal search of the car. This information, defendant contends, was the sole basis the police had for searching for the hidden VIN. He further argues that if the evidence was illegally seized, it cannot supply probable cause to search the car for the hidden VIN. We decline to give defendant an evidentiary hearing because we feel no search took place. In *United States v Johnson,* 431 F2d 441 (CA 5, 1970), the Fifth Circuit held that an inspection of an automobile to determine the VIN was not a "search" within the meaning of the Fourth Amendment. In *United States v Polk*[7] the Court explained its decision in *Johnson, supra:*

---

[6] *Brown v United States,* 356 US 148, 155–156; 78 S Ct 622, 627; 2 L Ed 2d 589, 597 (1958).

[7] *United States v Polk, supra,* at 647.

"Our recent decision in *United States v Johnson,* 413 F2d 1396 (CA 5, 1969), affirmed en banc, August 13, 1970, held that such a limited inspection of a vehicle identification number is not a search within the meaning of the Fourth Amendment. The rationale for this holding is that an automobile owner can have no reasonable expectation of privacy with respect to the car's VIN. See *Mancusi v DeForte,* 392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968). The 'reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.' *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967).

"Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

"Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car, identifies the car by its VIN. These requirements proceed from a purpose to keep track of the ownership of potential instruments of personal and property injury, so that drivers in automobile accidents can be traced and so that compulsory insurance requirements can be enforced. Additionally, the state seeks to protect ownership rights in these mobile and expensive assets. License plates are not sufficient for these purposes because of their easy removability.

"It is routine practice for policemen stopping cars in traffic control operations to ask for the automobile registration papers in addition to the driver's license. Viewing registration papers is part of the accepted regulatory scheme.

"VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be

no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment.

"A car is not a home. An automobile runs and stops on the public roads, where viewers may crawl under it or press their faces against its windows. Its exterior and much of its interior are within the 'plain view' of the casual or purposeful onlooker, and thus are not protected by the Fourth Amendment from searching eyes. See, *e.g., Marshall v United States,* 422 F2d 185 (CA 5, 1970); Wright, Federal Practice and Procedure § 668 (1969).

"Thus the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy. Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers."

We agree with the Fifth Circuit's analysis, and hold that no search took place.

Finally, defendant's claim that he was entitled to a preliminary examination is meritless. *People v Lazaroff,* 50 Mich App 84; 212 NW2d 743 (1973).

Affirmed.