## Richmond

### BONNIE WEST SHIRLEY V. COMMONWEALTH OF VIRGINIA.

June 10, 1977.

Record No. 761065.

Present: All the Justices.

Raymond H. Strople (Dennis F. McMurran; Moody, McMurran and Miller, Ltd., on brief), for plaintiff in error.

A.R. Woodroof, Assistant Attorney General (Anthony F. Troy, Attorney General, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the Court.

Bonnie West Shirley was convicted in the lower court of the grand larceny of a 1963 Chevrolet Corvette automobile and sentenced to serve five years in the penitentiary. Her conviction was the result, in part, of evidence obtained by police officers when they inspected the automobile pursuant to the provisions of Code § 46.1-9, which reads:

"**Right to inspect vehicles in garages, etc.** — Any peace officer or Division officer or employee who shall be in uniform or shall exhibit a badge or other sign of authority shall have the right to inspect any motor vehicle, trailer or semitrailer in any public garage or repair shop, for the purpose of locating stolen motor vehicles, trailers and semitrailers and for investigating the title and registration of motor vehicles, trailers and semitrailers. For such purpose the owner of any such garage or repair shop shall permit any such peace officer or Division officer or employee without let or hindrance to make investigation as herein authorized. (Code 1950, § 46-17; 1958, c. 541.)"

Defendant says the statute violates the Fourth and Fourteenth Amendments of the Constitution of the United States and the information obtained by the police was the product of an unreasonable search and seizure.

In August, 1974, the 1963 Chevrolet Corvette automobile of Donald Rood, valued at $1,700, was stolen. He promptly reported the theft to the police, but the vehicle was not recovered until August, 1975. On August 8, 1975, a Portsmouth detective and a special agent of the National Automobile Theft Bureau inspected a number of motor vehicles parked in the public garage and repair shop of defendant in Portsmouth. While on the premises the officers noticed that a 1963 Chevrolet Corvette was missing a public vehicle identification number. Upon inquiry the defendant admitted ownership of the automobile and handed the officers a document from the Division of Motor Vehicles of Virginia. This document bore a vehicle identification number which did not correspond to that of the Corvette, but rather corresponded to that of a 1962 Chevrolet Impala convertible. The officers determined that the license plates attached to the Corvette were assigned to a 1962 Impala. The special agent determined the serial number of the Corvette by checking the engine number and confidential serial number of the vehicle. The officers then made a search of the inside of the Corvette and recovered two official inspection stickers, indicating a Corvette as the automobile inspected but giving as the license number the number assigned to the 1962 Impala. It developed that the Corvette involved was the one stolen from Rood.

Thereafter defendant was arrested and indicted for the grand larceny of the Rood vehicle and three other vehicles which the inspection allegedly disclosed were also stolen. We are concerned here only with the count in the indictment which charges defendant with the larceny of Rood's automobile.

Defendant says that the court erred in refusing to suppress the evidence obtained by the police on August 8, 1975 during their inspection of the automobile, *i.e.*, the registration, the confidential serial number, the engine number, the evidence of a missing number and evidence of inspection receipts.

Code § 46.1-9 is one of numerous related motor vehicle laws designed for the protection of lawful owners and the public. Among these statutes are: Code § 46.1-41, which requires every

owner of a motor vehicle to be operated upon any highway in this state to first obtain a certificate of title and registration; Code § 46.1-4, which requires that every motor vehicle owner apply for a new identification number if such number has been removed, obliterated or has become illegible; Code §. 46.1-5, which makes it a misdemeanor for any person to purchase, trade, exchange or barter for a motor vehicle knowing or having reason to believe that the vendor has no certificate of title; Code § 46.1-7, which requires any operator of a motor vehicle to have in his possession the registration card; Code §§ 46.1-82 and 46.1-83, which make it unlawful to remove, alter, change or conceal any motor number, serial or other identification number; Code § 46.1-84, which makes it unlawful to sell, or to operate, any motor vehicle which does not bear a permanent identification number; Code § 46.1-85, which makes the fraudulent altering or forging of a certificate of title or registration card a felony; Code § 46.1-8, which authorizes police officers to stop any motor vehicle for the purpose of inspecting the vehicle, its serial or engine number, etc.; and Code § 46.1-6, which requires every county, city, town, or other political subdivision of the state and its law enforcement officers to enforce these provisions of the motor vehicle laws.

Both the public and confidential identification numbers are put on vehicles to aid in identifying them. There are so many cars of the same make, model, design, style and color that individual vehicles can be identified only through the use of such numbering. Requirements for disclosing and recording vehicle identification numbers are designed to keep track of the ownership of potential instruments of personal and property injury, so that automobile owners and drivers involved in accidents can be traced and insurance requirements can be enforced. In addition, many states require periodic inspection for mechanical defects and the exhibition of stickers and certificates showing that the inspections have been made. The state seeks to protect ownership rights in vehicles which are mobile and expensive assets. License plates alone do not suffice because they can be easily transferred from one vehicle to another.

It is routine for law enforcement officers to stop cars and to inspect automobile registration papers as well as operators' licenses. Viewing such papers is an accepted part of the regulatory system. Further, vehicle identification numbers are

routinely disclosed incident to the purchase and sale of vehicles and the purchase of insurance. Titles, registration certificates, inspection certificates and insurance policies identify cars by their vehicle identification numbers. As the Court observed in *United States* v. *Polk*, 433 F.2d 644, 647-48 (5th Cir. 1970):

"There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment.

"A car is not a home. An automobile runs and stops on the public roads, where viewers may crawl under it or press their faces against its windows. Its exterior and much of its interior are within the 'plain view' of the casual or purposeful onlooker, and thus are not protected by the Fourth Amendment from searching eyes. *See, e.g., Marshall* v. *United States*, 5 Cir., 1970, 422 F.2d 185; Wright, Federal Practice and Procedure § 668 (1969).

"Thus the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy. Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers. Although opening the door of a car may involve a technical trespass, such action does not invade any expectations of privacy."

In *United States* v. *Powers*, 439 F.2d 373, 375-76 (4th Cir. 1971), the Court said:

"Inspection of a car's identification number differs from a search of a vehicle and seizure of its contents in one important aspect. The occupants of the car cannot harbor an expectation of privacy concerning the identification of the vehicle. The state requires manufacturers to identify vehicles by affixing identification numbers which are also recorded in registries where the police and any interested person may inspect them. [footnote omitted] Since identification numbers are, at the least, quasi-public information, a search of that part of the car displaying the number is but a minimal invasion of a person's privacy. A police officer, therefore, should be freer to inspect

the numbers without a warrant than he is to search a car for purely private property. Because of the car's mobility, he may have little opportunity to do so if he must first secure a warrant or have probable cause for a search or arrest. . . ."

It does not appear that the constitutionality of Code § 46.1-9 has ever before been challenged, or that it has previously been considered by this Court. However, there have been a number of cases before the Supreme Court which involved administrative searches based on justifying statutes. The Attorney General cites *United States* v. *Biswell*, 406 U.S. 311 (1972). There, pursuant to the provisions of the Gun Control Act, a federal treasury agent visited the defendant, a pawn shop operator who was federally licensed to deal in sporting weapons, demanded the right to inspect the defendant's books and requested entry to a locked gun storeroom. The agent's right to make the inspection was challenged and the Court held that if the Gun Control Act was to be properly enforced and inspection made effective, inspection without warrant had to be deemed reasonable, official conduct under the Fourth Amendment. The Court said:

"Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.

"It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. . . ." 406 U.S. at 316.[1]

---

[1] *Biswell* has been applied by state courts and lower federal courts to permit searches, without a warrant, of various regulated activities. *See, e.g., United States* v. *Rivera-Rivas*, 380 F. Supp. 1007 (D.N. Mex. 1974) (trucks — weighing); *State* v. *Dailey*, 209 Kan. 707, 498 P.2d 614 (1972) (private clubs — gambling devices); *State* v. *Wybierala*, 235 N.W.2d 197 (Minn. 1975) (pawn shops — stolen goods); and *Lanchester* v. *Pennsylvania State Horse Rac. Com'n*, 16 Pa. Commw. Ct. 85, 325 A.2d 648 (1974) (horse racing stables — stimulant drugs, etc.).

In *Almeida-Sanchez* v. *United States,* 413 U.S. 266 (1973), the Court noted that businessmen engaged in federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, and in effect consent to the restrictions placed upon them. And in *G.M. Leasing Corp.* v. *United States,* 429 U.S. 338 (1977), the Court said:

"The Court, of course, has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context. . . ." 429 U.S. at 353.

■ The Fourth Amendment was adopted to protect the right to be free from unreasonable searches, and as a general rule a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant. *Cady* v. *Dombrowski,* 413 U.S. 433 (1973). An exception to this rule is the warrantless search of motor vehicles under exigent circumstances when probable cause for a search exists. *Chambers* v. *Maroney,* 399 U.S. 42 (1970); *Carroll* v. *United States,* 267 U.S. 132 (1925); *Westcott* v. *Commonwealth,* 216 Va. 123, 216 S.E.2d 60 (1975).

■ Originally the exception to the warrant requirement was limited to searches of motor vehicles stopped by the police on the highway because of the impracticality of obtaining a search warrant, and because the mobility of the motor vehicle made it possible for the owner to evade the police or remove the vehicle from the jurisdiction. Later decisions, however, recognized that exigent circumstances for a search of a motor vehicle may exist when a vehicle is parked or otherwise immobile if a search is necessary to aid the police in performing their regulatory and investigatory duties. The important factor to be considered in determining whether a search is reasonable is the expectation of privacy which is infringed by such a search. Universally the courts have recognized that one has a lesser expectation of privacy in a motor vehicle than in a home or other building. *Cardwell* v. *Lewis,* 417 U.S. 583 (1974). In *United States* v. *Ware,* 457 F.2d 828, 829 (7th Cir. 1972), the Court said:

"Checking the serial number of an automobile by opening a door or lifting the hood over the motor has been held not to be a search. Cotton v. United States, 9 Cir., 1967, 371 F.2d 385,

392; Pasterchik v. United States, 9 Cir., 1968, 400 F.2d 696, 700, cert. den., 395 U.S. 982, 89 S. Ct. 2142, 23 L.Ed.2d 770, where the officer has a legitimate reason to identify the automobile. The Ninth Circuit adds a caution (footnote 5) against breaking into a locked car without a warrant, but that is not the case here."

■ Our decision in the instant case was presaged by *Fox* v. *Commonwealth*, 213 Va. 97, 99, 189 S.E.2d 367, 369 (1972), where we said: "[I]f the mere opening of the automobile's doors to determine its serial number, or to look for its registration card, constitutes a search, it was a reasonable one. *Cotton* v. *United States*, 371 F.2d 385 (9th Cir. 1967); *Muegel* v. *State*, 257 Ind. 146, 272 N.E.2d 617 (1971)." The search of that part of a vehicle on which serial or identification numbers are found has been regarded as such a minimal invasion of a person's privacy that such a search, if a search at all, need not be based on probable cause but on some lesser standard of belief. *See Powers, supra; Polk, supra.*[2]

In *South Dakota* v. *Opperman*, 428 U.S. 364 (1976), an inventory search decision, the Court said:

"Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. [footnote omitted] In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. *Cady* v. *Dombrowski, supra,* 413 U.S. at 442. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. . . ." 428 U.S. at 367-68.

---

[2] *See also United States* v. *Sherriff,* 546 F.2d 604 (5th Cir. 1977); *United States* v. *Brown,* 535 F.2d 424 (8th Cir. 1976); *United States* v. *Squires,* 456 F.2d 967 (2d Cir. 1972); *United States* v. *Dadurian,* 450 F.2d 22 (1st Cir. 1971); *United States* v. *Graham,* 391 F.2d 439 (6th Cir. 1968); *State* v. *Colon,* 6 Conn. Cir. Ct. 722, 316 A.2d 797 (1973); *People* v. *Wolf,* 60 Ill.2d 230, 326 N.E.2d 766 (1975); *Commonwealth* v. *Navarro,* 310 N.E.2d 372 (Mass. App.Ct. 1974); *People* v. *Valoppi,* 61 Mich. App. 470, 233 N.W.2d 41 (1975); and *State* v. *Bagnard,* 24 N.C. App. 54, 210 S.E.2d 93 (1974).

In the case under review Shirley was engaged in the business of automobile repairing, a business regulated by Virginia Code § 46.1-9, which requires submission to inspection of motor vehicles in any public garage or repair shop by any police officer or division officer or employee. Defendant knew, or should have known, of these statutory requirements when she engaged in the business. She was placed on notice that the premises of her automobile repair business and the vehicles located on the premises were subject to inspection at any time.

It was said in *United States* v. *Powers, supra,* that the legality of the search [inspection of a car's identification number] should be tested by the objective standards stated in *Terry* v. *Ohio,* 392 U.S. 1, 22 (1968):

" '[W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " 439 F.2d at 376.

The Court in *Powers* further said that "This standard can be met, we conclude, when the officer has a legitimate ground for checking the identification number. . . ." There the officers became suspicious about the ownership of the car Powers had been driving because the identification number was missing from the door post. The Court held that "[q]uite reasonably this fact alerted the police to the need for further investigation, and it alone furnished a legitimate reason for checking the confidential number. We need not, therefore, describe other circumstances that would justify a search for an identification number. . . ." 439 F.2d at 376.

In the instant case the statutory inspection of motor vehicles on defendant's premises by the officers revealed four vehicles from which the public identification numbers were missing, including the 1963 Chevrolet Corvette in question. While this alone justified a further search of the vehicle for an identification number, the suspicions of the officers were additionally aroused by the fact that the registration certificate and the license plates attached to the Corvette were for an automobile of a different model, type and year from that of the vehicle being inspected. The officers had cause to continue their inspection and investigation and to seize pertinent documents they found regarding the vehicle.

■ We find no constitutional objection to Code § 46.1-9. It is a proper and necessary regulatory measure.

The judgment of the lower court is

*Affirmed.*