# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

CALVIN TILLMAN,

      Defendant-Appellee.

UNPUBLISHED
June 22, 2017

No. 331440
Wayne Circuit Court
LC No. 15-008846-01-FC

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

The trial court granted defendant's motion to suppress evidence with respect to cocaine that had been found in defendant's vehicle after it was stopped by police shortly after midnight on October 2, 2015. On the basis of the suppression ruling, the trial court dismissed the charges against defendant, which had consisted of possession with intent to deliver more than 1,000 grams of cocaine, MCL 333.7401(2)(a)(*i*), and possession of more than 1,000 grams of cocaine, MCL 333.7403(2)(a)(*i*). The prosecution appeals as of right, and we reverse and remand for reinstatement of the charges.

A trial court's factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. The Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11, secure the right of the people to be free from unreasonable searches and seizures. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The touchtone of any Fourth Amendment analysis is reasonableness, and reasonableness is measured by examination of the totality of the circumstances. *Williams*, 472 Mich at 314.

"One of the well-established exceptions to the warrant requirement is known as the automobile or motor vehicle exception," which "is premised on an automobile's ready mobility and pervasive regulation[.]" *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). The *Kazmierczak* Court stated:

-1-

[I]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more. Thus, under the automobile exception, the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists. [*Id.* at 418-419 (citations omitted).]

"A police officer who witnesses a person violating . . . [the Motor Vehicle Code] . . ., which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe, as soon as possible and as completely as possible, . . . a written citation[.]" MCL 257.742(1). A traffic stop is generally not unlawful and does not violate the Fourth Amendment if the officer conducting the stop has probable cause or a reasonable and articulable suspicion to believe that a violation of the Motor Vehicle Code had been committed or was occurring. *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002); *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999).

In the present case, defendant's vehicle caught the attention of two officers in their police cruiser when they observed it traveling down a side street. The officers became suspicious upon witnessing defendant turn off the vehicle's headlights while still moving on the roadway just moments before pulling his vehicle over to the curb, where defendant stopped for a minute or so before pulling away from the curb and proceeding. When the officers eventually pulled defendant's vehicle over to the side of the road, one officer approached the driver's side of defendant's vehicle and the other officer stationed himself at the passenger-side front door for purposes of safety. Defendant was informed that he had been stopped because he was observed driving without his headlights on, although he was later given a citation for failing to activate his turn signal when pulling away from the curb. We conclude that the police had the authority to make the stop for failure to have the headlights activated while defendant was driving on the roadway, even though it was for a very short distance, MCL 257.684(a).[1] There was a clear violation of the statute. Accordingly, we find it unnecessary to examine whether MCL 257.648[2]

---

[1] MCL 257.684(a) provides:

> Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as hereinafter stated. When lighted lamps and illuminated devices are required by law no vehicle shall be operated upon any highway of this state with only the parking lights illuminated on the front of the vehicle.

[2] MCL 257.648(1) provides:

> The operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in this section.

required defendant to activate his turn signal before pulling away from the curb or, assuming no such requirement, whether it would constitute a reasonable mistake of law for an officer to believe that the statute mandated activation of a turn signal. See *Heien v North Carolina*, 574 US __; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014).

Once properly stopped, the police viewed, from a position outside the vehicle, a large amount of cash in the front passenger area, which money was described as being at least six inches thick and in multiple rubber-banded bundles.[3] Defendant claimed that he was collecting rent. We reiterate that the stop occurred shortly after midnight. At this juncture, the police officers returned to their cruiser and ran defendant's name through the Law Enforcement Information Network (LEIN); there were no outstanding warrants. The officers debated on how to proceed and decided to let defendant leave. Both officers returned to defendant's vehicle, and one of them handed defendant his license and registration, informing defendant that he was free to go, while the other officer was again stationed at the passenger side of the vehicle. As the officers began walking back to their police cruiser, the officer who had been standing next to the passenger side of defendant's vehicle noticed, with the aid of his flashlight and while glancing into defendant's vehicle near the rear right door of the car, a package wrapped in silver cellophane and plastic sticking halfway out from underneath the front passenger seat. The officer opined, on the basis of his experience, that the package had the classic appearance of wrapped narcotics. The officer informed his partner of what he had observed, and defendant was then asked to unlock the back doors, at which point the police removed the package and asked defendant about its contents. Defendant replied that it was cocaine, and he was promptly arrested.

In *Texas v Brown*, 460 US 730, 739-740; 103 S Ct 1535; 75 L Ed 2d 502 (1983), the United States Supreme Court made the following observations that we find pertinent to our analysis:

> The Court of Criminal Appeals stated that it did not question the validity of the officer's initial stop of appellant's vehicle as a part of a license check, . . . and we agree. It is likewise beyond dispute that [the officer's] action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. . . . Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.

> Likewise, the fact that [the officer] changed his position and bent down at an angle so he could see what was inside Brown's car . . . is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's

---

[3] In *Williams*, 472 Mich at 315, our Supreme Court discussed the nature and scope of a valid traffic stop, recognizing that circumstances can evolve once a motorist is stopped for a traffic violation that may justify further inquiry.

automobile from any number of angles; there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment. [Citations, quotation marks, alteration brackets, and ellipses omitted.][4]

Accordingly, here, the officer's observation of the package in defendant's vehicle, after a valid traffic stop and within a reasonable time following the stop, did not constitute a search within the meaning of the Fourth Amendment. And when consideration of the package, which, again, was wrapped in a manner characteristic of drug packaging, is taken in conjunction with consideration of the vast amount of cash discovered in the front passenger area, along with defendant's suspicious act of shutting off his headlights before parking and his dubious explanation regarding the presence of the cash, there easily existed sufficient evidence to establish probable cause to search the vehicle for contraband under the automobile exception to the warrant requirement. See *Kazmierczak*, 461 Mich at 418-419. To the extent that the trial court did not believe that the officer saw the package of cocaine before opening the car door, all of the testimony, and especially the video from the police cruiser, established beyond any reasonable dispute that there was no basis whatsoever for any such determination by the court. Indeed, the video corroborated entirely the officers' accounts of what transpired and the sequence of events as relevant to the constitutional analysis. Thus, even though we appreciate that deference is given to the trial court in assessing the credibility of witnesses, *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005), we cannot do so in this case in light of the record.

Reversed and remanded for reinstatement of the charges against defendant. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

---

[4] In *People v Valoppi*, 61 Mich App 470, 479; 233 NW2d 41 (1975), this Court similarly stated:

A car is not a home. An automobile runs and stops on the public roads, where viewers may crawl under it or press their faces against its windows. Its exterior and much of its interior are within the plain view of the casual or purposeful onlooker, and thus are not protected by the Fourth Amendment from searching eyes. [Citations and quotation marks omitted.]