Hanover District Court,
No. 5521.

STATE

*v.*

ANTHONY SEVERANCE.

Argued November 1, 1966.
Decided January 30, 1968.

*George S. Pappagianis,* Attorney General, *William F. Cann,*

Assistant Attorney General and *Robert E. Bowker,* county attorney ( *Mr. Cann* orally ), for the State.

*N. George Papademas* ( by brief and orally ), for the defendant.

PER CURIAM.   This test case challenges the legality and constitutionality of the practice of road checks by the State Police in which all motorists in one lane of traffic are stopped for routine inspection to ascertain whether the operator has a license and the motor vehicle is registered. The motor vehicle law requires the operator of a motor vehicle to be licensed ( RSA 261:1, 13 ) and RSA 261:23 provides that "every person operating a motor vehicle shall have the certificate of registration for said vehicle and his license to operate upon his person or in the vehicle in some easily accessible place . . . . " These statutory provisions are supplemented by RSA 262:26 which provides a penalty of a fine for a motor vehicle operator " . . . who shall refuse or neglect to stop when signaled to stop by any police officer who is in uniform . . . or who refuses on demand of such officer to produce his license to operate such vehicle or his certificate of registration . . . . " Similar statutory provisions in other jurisdictions are quite common and generally they have been construed as authorizing road checks as a valid and reasonable method of enforcing public safety. *Mincy* v. *District of Columbia,* 218 A. 2d 507 ( D. C. Ct. App. 1966 ); *State* v. *Kabayama,* 98 N. J. Super. 85 ( 1967 ); *Commonwealth* v. *Mitchell,* 355 S. W. 2d 686 ( Ky. App. 1962 ); *State* v. *Smolen,* 4 Conn. Cir. 385 ( 1967 ), petition for certification for appeal denied 231 A. 2d 283 ( Conn. 1967 ); *Morgan* v. *Heidelberg,* 246 Miss. 481 ( 1963 ); *Miami* v. *Aronovitz,* 114 So. 2d 784 ( Fla. 1959 ); *Lipton* v. *United States,* 348 F. 2d 591 ( 9th Cir. 1965 ). See Fisher, Laws of Arrest, *s.* 38 ( Traffic Institute, Northwestern University 1967 ).

Any state " . . . has a legitimate interest in the roadworthiness of automobiles which transport, but which can maim and kill . . . This comprehends both technical fitness of the driver and the mechanical fitness of the machine. After the event, it is always too late. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the inspection may produce the irrefutable proof that the law has just been violated. The purpose of the check is to determine the

present, not the past: *is* the car, *is* the driver now fit for further driving? In the accommodation of society's needs to the basic right of citizens to be free from disruption of unrestricted travel by police officers stopping cars in the hopes of uncovering the evidence of non-traffic crimes, cf. Brinegar v. United States, 1949, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879; Clay v. United States, 5 Cir., 1956, 239 F. 2d 196; Clay v. United States, 5 Cir., 1957, 246 F. 2d 298, cert. denied, 355 U. S. 863, 78 S. Ct. 96, 2 L. Ed. 2d 69; Rios v. United States, 1960, 364 U. S. 353, 80 S. Ct. 1431, 4 L. Ed. 2d 1688, the stopping for road checks is reasonable and therefore acceptable. Likewise, an arrest is proper if the check reveals a current violation which by its nature must have been taking place in the immediate past. State and Federal Courts, including this one, have uniformly sustained such checks and arrests when not done as a subterfuge or ruse." *Myricks* v. *United States,* 370 F. 2d 901, 904 ( 5th Cir. 1967 ). See notes, 46 Iowa L. Rev. 802 ( 1961 ); 51 Calif. L. Rev. 907 ( 1963 ); 1960 Wash. U. L. Q. 279; 14 DePaul L. Rev. 381 ( 1965 ).

The mounting fatality rate in this state, the steadily increasing number of violations involving the operation of motor vehicles without licenses or registration, together with the number of accidents involving unlicensed drivers is a pressing problem which is more than a statistic. "Clearing the highways of irresponsible drivers" is one of the "problems that have taxed the ingenuity of lawmakers and administrators." *Calif. Auto Ass'n* v. *Maloney,* 341 U. S. 105, 110. See *State* v. *Despres,* 107 N. H. 297, 299. "If stopping motorists indiscriminately by police officers for the good faith purpose of inspecting or asking for the exhibition of a driver's license was not permitted, the licensing law would break down and become a nullity, and the objective for promoting public safety from irresponsible automobile drivers would be seriously impeded. There would be but few occasions when an officer could otherwise learn that the law was being violated." *Commonwealth* v. *Mitchell,* 355 S. W. 2d 686, 688-689 ( Ky. App. 1962 ).

The State argues, in its well prepared brief, that a motor vehicle license or registration certificate is a privilege and not a right and the motorist must accept the privilege with any conditions which the Legislature attaches thereto. The dichotomy of privilege and right is a slippery tool in the judicial process and ought to be used with discrimination and care. It is true that in the earlier

days of motor vehicles this court accepted the view that a motor vehicle license was a mere privilege. *State* v. *Sterrin,* 78 N. H. 220; *State* v. *Corron,* 73 N. H. 434; *Opinion of the Justices,* 81 N. H. 566, 568; *Rosenblum* v. *Griffin,* 89 N. H. 314, 319; *State* v. *Wood,* 98 N. H. 418, 419. However later cases recognized that a motor vehicle license may be more than a privilege. *Opinion of the Justices,* 102 N. H. 183, 186; *State* v. *Gallagher,* 102 N. H. 335, 338. We do not decide this case on the basis that a motor vehicle license or a registration certificate is a mere privilege. As stated in *State* v. *Despres,* 107 N. H. 297, 299, "Whether a motor vehicle license is considered a privilege or a right or a combination of both 'it is nevertheless subject to regulation under the police power.' " See *Wall* v. *King,* 206 F. 2d 878 ( 1st Cir. 1953 ). We conclude that a road check for the good faith purpose of inspecting motor vehicle licenses and registration certificates is authorized by our statutes and is a constitutionally valid method of enforcing public safety so long as the road check is not used as a subterfuge for uncovering evidence of other crimes. RSA 262:26; *Myricks* v. *United States,* 370 F. 2d 901 ( 5th Cir. 1967 ). Fisher, Laws of Arrest, *s.* 38 ( Traffic Institute, Northwestern University 1967 ). See 154 A.L.R. 812; 6 A.L.R. 3d 506.

In the present case the agreed statement of facts contains the following statement: "Said road check was established for the purposes of examining the licenses of operators and the registration of vehicles and not by reason of any report that a crime had been committed in the near vicinity or for any other purpose than a routine inspection procedure." If this statement is taken at its face value it establishes that the road check was made in good faith and not as a subterfuge for checking evidence of other crimes. However, we note that this occurred on the night of December 31, 1965 which may be an evening devoted by some to gaiety and revelry. This raises the question whether the road check was a bone fide endeavor to enforce the license and registration provisions of our law or was being conducted for the purpose of discovering evidence of other crimes. For that reason we remand the case. If the district court on all the evidence finds that this was a good faith road check then the motion to suppress should be denied; otherwise it should be granted.

*Remanded.*