STATE of North Dakota, Plaintiff
and Appellee,

v.

Leon STOCKERT, Defendant
and Appellant.

Crim. No. 547.

Supreme Court of North Dakota.

Aug. 24, 1976.

Albert J. Hardy, State's Atty., and Donald L. Jorgensen, Asst. State's Atty., Dickinson, for plaintiff and appellee State of North Dakota.

Freed, Dynes, Malloy & Reichert, Ronald A. Reichert, Dickinson, for defendant and appellant.

VOGEL, Justice.

The issue raised in this case is whether Section 18 of the North Dakota Constitution and the Fourth and Fourteenth Amendments to the United States Constitution permit the search, without a warrant, of the glove compartment of an unoccupied automobile stuck in a snowbank on private property, and the seizure, without a warrant, of the contents of the glove compartment. We hold that the search and seizure were unreasonable, and reverse and remand for a new trial.

On April 20, 1975, shortly after midnight, three employees of the A & W Drive-In restaurant in Dickinson were preparing to leave. While one of them was removing

snow from the windshield of her car, a man wearing a ski-mask and dark coveralls and holding a rifle, confronted her and said, "Hey, lady, give me the money." She said she did not have the money because the boss had taken it with him. The man said, "Okay," and ran away in a northeasterly direction. The incident was immediately reported to the Dickinson police, and an officer arrived about 1 a. m. Due to darkness, the investigation was discontinued until the following morning at about 6 a. m. Two officers then followed footprints from the scene of the attempted robbery to a grove of trees where they found a rifle, a pair of coveralls, and a ski-mask thrust into the branches of an evergreen tree. Two of the officers followed another set of tracks which led to an automobile stuck in a large bank of snow. The driver's door was locked and the passenger doors were blocked with snow. After examining the car's exterior, one of the officers entered the vehicle through an unlocked rear door on the driver's side. He opened the glove compartment and removed a billfold, some money, a driver's license, a vehicle registration card, and a "plastic bag containing green plant material." The critical question in this case concerns the admissibility at the trial of the driver's license found in the billfold taken from the glove compartment. It was offered and received in evidence at the trial to identify the defendant as the person committing the attempted robbery. A motion to suppress was made prior to trial and was denied. A motion to sever the two charges of attempted robbery and possession of marijuana was granted, but a motion for mistrial, made when one of the officers testified at the trial as to the finding of the bag of green plant material, was denied.

The State argues in the alternative either that the entry into the glove compartment and the removal of the contents were not a search and seizure, or that they were justified by the provisions of Section 39–04–55, North Dakota Century Code, which requires, in part:

"The registration card issued for a vehicle shall be carried in the driver's compartment of the vehicle . . . . at all times while the vehicle is being operated upon a highway in this state. Such card shall be subject to inspection by any peace officer or highway patrolman. . . . "

## I

Before going farther, we pause to dispose of the motion of the State to dismiss the appeal. The State alleges that the appeal should be dismissed because the appellant's brief does not state the issues to be considered by the court on the appeal, and that the appeal is denominated on the title page of the brief as an "appeal from order denying motion to suppress." These contentions are insufficient. The notice of appeal specifies that it is from the judgment. Such a notice, if timely, as it is here, is sufficient to permit the raising of all questions of law on which the trial court has ruled in a criminal case. See *State v. Haakenson,* 213 N.W.2d 394 (N.D.1973). Furthermore, defendant's statement in his brief of the issue raised by the appeal ("whether the police have a right to conduct a warrantless search of an automobile immobilized upon private property") is sufficient to raise the issue before us. A mere misdescription of the kind of appeal on the title page of a brief is not fatal to the appeal.

## II

In *State v. Matthews,* 216 N.W.2d 90, 99 (N.D.1974), we stated three basic premises in search-and-seizure cases. The first was that "all searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant" [quoting *State v. Gagnon,* 207 N.W.2d 260, 263 (N.D. 1973)]. The second is that where a violation of the Fourth Amendment provision as to search and seizure is asserted, the burden of proof on a motion to suppress is on the State. The third is that "ever since *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6

L.Ed.2d 1081 (1961), evidence obtained by search and seizure violative of the Fourth Amendment is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. *State v. Manning,* 134 N.W.2d 91 (N.D.1965)."

*State v. Matthews* was a case where a sealed package containing marijuana, which had been transported by bus, was opened by or at the request of police officers and then resealed and held by the bus company until it was called for. The police were then notified. The police arrested the person who called for the package after he had it in his possession. We held that the search and seizure were violative of the constitutional rights of the defendant, pointing out that, among other things, the police had ample time within which to obtain a search warrant from an impartial magistrate.

We also pointed out in *State v. Matthews* that the existence of probable cause to believe that a crime had been committed, alone, without a search warrant or a simultaneous, valid arrest or other exigent circumstances, was insufficient to justify a warrantless search. In *State v. Iverson,* 219 N.W.2d 191 (N.D.1974), we held that a belief, however well founded, that contraband is concealed within a dwellinghouse furnishes no justification for a search without a warrant, and that a search unlawfully undertaken is not made valid by evidence of crime which it brings to light. These principles are equally applicable to the case before us.

The State strenuously urges that searches of automobiles are treated differently from searches of dwellinghouses and other buildings, citing *State v. Binns,* 194 N.W.2d 756 (N.D.1972); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). To these might be added the very recent cases of *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d —— (1976), and *Texas v.* *White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

The cases cited generally recognize that searches of vehicles may sometimes be made under circumstances where searches of buildings would not be allowed because of the ambulatory character of automobiles, the lesser expectation of privacy as to automobiles, and the fact that automobiles are often brought within the plain view of officers. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Binns, supra; State v. Matthews, supra; South Dakota v. Opperman, supra.* Warrantless searches of automobiles are sometimes authorized when the automobiles are lawfully within the custody of the police, who have a duty to protect the vehicle from damage or theft and the right to protect themselves from the use of weapons which may be found within the vehicle. *South Dakota v. Opperman, supra; Cady v. Dombrowski, supra.* However, none of these considerations apply in the case before us. The automobile in question was not in police custody. It was located on private property, not on a highway. It was stuck in snow, so it was not immediately movable.

And there was ample time within which to obtain a warrant. There was a five-hour delay between the officers' arrival at the scene and the commencement of investigation at the scene. After the automobile was discovered and the driver's license was obtained, there was a delay of at least eight hours before the defendant was contacted, at about 3:30 in the afternoon.

There was no reason to believe that the automobile contained any contraband. The weapon and the clothing allegedly used as a disguise in the attempted robbery were discovered before the automobile was discovered.

Specifically, a warrantless search of a glove compartment would be permissible and constitutionally reasonable if it were part of a standard operating policy of taking inventory of the contents of automobiles impounded or otherwise in lawful po-

270

lice custody where the policy is intended in good faith to secure or protect the car or its contents or to ensure the safety of its custodians. *South Dakota v. Opperman, supra.* Such a case was *United States v. Pennington,* 441 F.2d 249 (5th Cir. 1971), where a glove compartment was entered and a pistol was taken during an inventory search of an impounded automobile. Another such case was *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), where a piece of paper found in a glove compartment during an inventory search made of a vehicle impounded for forfeiture proceedings was used to convict the defendant. The justification for the inventory was the safeguarding of the owner's property. *Cady v. Dombrowski, supra.*

But in the case before us, the vehicle was on private property [see *Coolidge v. New Hampshire, supra*], was no danger to traffic [compare *Cady v. Dombrowski, supra*], was not in police custody [see *South Dakota v. Opperman, supra,* and cases cited], was not suspected of containing contraband [*State v. Binns, supra*], and was not immediately mobile and was not suspected of being (or of containing anything) dangerous to the public [*Cady v. Dombrowski, supra*]. In fact, it was admitted by the officers that they entered the car and the glove compartment to find evidence of the ownership of the car which they believed to have been used in the attempted robbery and thereby to identify a suspect.

Under such circumstances, the fact that it was an automobile they were searching becomes unimportant. No reason for the so-called automobile exception existed—no mobility, no danger, no impounding, no need to inventory, and no public custody—and the search was not incident to arrest. Nor is there any indication that there was insufficient time to obtain a warrant. On the contrary, there were at least five to six normal daytime working hours intervening between the discovery of the driver's license and the first contact with the defendant—a clear indication of a lack of urgency.

If the search in this case were to be upheld, it would be difficult to prevent war-rantless searches of any parked vehicle in the neighborhood of any crime. We hold that the search was unreasonable under Section 18, North Dakota Constitution.

III

■ The excuse for the search (that it was permissible to search the glove compartment to discover the registration card under the terms of Section 39–04–55, N.D. C.C.) is insufficient. By its plain terms the statute is inapplicable. The automobile searched was not "being operated" at the time of the search, nor had it been operated for many hours. Nor was it "upon a highway." It was on private property and had been there for many hours. Section 39–04–55 gave no authority to search it. Even if its terms covered unoccupied automobiles on private property, a statute requiring the carrying of registration cards does not give officers carte blanche to make warrantless searches generally. It does not authorize an officer to search or stop single automobiles on suspicion in the absence of any indication of violation of law or ordinance. It cannot be used as a mere subterfuge to obtain information or evidence not related to the licensing requirement. *People v. Harr,* 93 Ill.App.2d 146, 235 N.E.2d 1 (1968), and cases cited. The result would be different if a good-faith road check of multiple vehicles were being made for the purpose of enforcing license or registration statutes, and not as a subterfuge for uncovering evidence of other crimes. *State v. Severance,* 108 N.H. 404, 237 A.2d 683 (1968), and cases cited. These cases involved the application of statutes similar to 39–04–55 to the stopping of moving vehicles. They are not directly in point on our question, which relates to the searches of stationary unoccupied vehicles. But we think they provide guidance and they tend in the direction of a holding that Section 39–04–55 does not justify a warrantless search of a single vehicle for evidence of a crime unrelated to any possible licensing or registration violations. We so hold.

■ The State cites *People v. Valoppi,* 61 Mich.App. 470, 233 N.W.2d 41 (1975), in

support of its argument that police intrusion into the glove compartment and billfold was not a search. *Valoppi* and other similar cases such as *United States v. Johnson,* 431 F.2d 441 (5th Cir. 1970), and *United States v. Polk,* 433 F.2d 644 (5th Cir. 1970), deal with police inspections of vehicles to determine the vehicle identification number, which is customarily found on a metal plate on a door pillar and stamped on the frame or other location not ordinarily within in view. We do not believe that these cases support the State's contention that the police had a right to search a glove compartment for a registration certificate and seize other property within the glove compartment. *Valoppi, Johnson,* and *Polk* hold that the owners or possessors of vehicles can have no reasonable expectation of privacy with respect to the identification numbers of vehicles. That there can be an expectation of privacy in a glove compartment is specifically recognized in *United States v. Polk, supra,* where it was pointed out that the police there made " . . . no search of private areas of the automobile, for instance the glove compartment, for identification; . . . " 433 F.2d 644, at 646.

## IV

The foregoing discussion is intended to show, in part, that the search in the present case was not permissible under current Federal constitutional standards. But regardless of whether it failed to conform to Federal constitutional standards, we are satisfied that it failed to conform to North Dakota State constitutional standards, as expressed in *State v. Matthews, supra; State v. Iverson, supra;* and *State v. Binns, supra.*

Individual States are free to impose higher standards than the Federal standards. *Cooper v. California, supra; State v. Matthews, supra.*

## V

One other point which may arise upon retrial concerns us.

We believe that references to the "green plant material" by a witness should have been stricken when objected to. However, no motion in limine appears to have been made before trial to forbid reference to the material, which was the subject of a separate charge severed from the attempted robbery charge. In view of the state of the record, we do not reverse and remand on this ground.

Reversed and remanded for a new trial.

ERICKSTAD, C. J., and PEDERSON, J., concur.

SAND, Justice (special concurrence).

The state of the record of this case, particularly as to whether or not the snowbound vehicle in question was on a private or a public road is weak and leaves much to be desired, yet, in my opinion, this is a crucial fact.

The testimony refers to it as a road, without any adjectives, and in one instance the officer was asked by the prosecutor, "Patrolman Lynch, is this a road, a public road at point 'v'?", to which the patrolman replied, "I wouldn't say for sure if it is a public road or a private road. I couldn't say for sure." However, in the presentation and argument before the trial court on the suppression hearing, the prosecutor stated, "The car—the defendant was not on a public highway. It was on private property. It was operable."

During oral argument before this Court, the prosecutor expressed reservations whether or not the road in question was public or private, which leaves me with the impression that the prosecutor might have thought that possibly some portion of the road was private, that at a certain point the road was considered private, as distinguished from public. It raises the further question whether or not the prosecutor is attempting to distinguish between a public *highway* and a public *road,* or public lane, which I don't think is material. The crucial or material fact is whether or not the road, of whatever nature, was private or public, regardless of whether it is called a lane, a road, a thoroughfare, a street, a highway,

an interstate, or by any other comparable name.

The testimony indicates that there were houses along the road in question. This could leave the suggestion that the road was a public road, or at least was a road shared by a number of residents. Unfortunately, this fact alone, without any further description of the road or its use, is not sufficient from which a firm conclusion can be made on the question of fact whether or not the road was private or public. An examination of the diagram made and introduced at the trial as Exhibit I does not resolve the question.

Under the circumstances as we have here, where the evidence in the record is meager, and where the prosecutor represented to the court on a material issue which could be considered as an admission, that the road in question was private, I am inclined to reason that this constitutes sufficient justification to conclude that the road in question was private.

Having reached this conclusion, the case law as developed by the United States Supreme Court on United States constitutional questions, and as set out fully in the majority opinion, applies to State courts until such time as the United States Supreme Court rules differently.[1]

The prosecutor, in the presentation and oral argument before the trial court on suppression hearing, also stated, "The testimony of the officer is uncontroverted. They did not go into the car looking for the contraband. They went into the car looking for the identification of its owner." There was no indication that the officers were looking for a stolen vehicle. The record does not suggest that the police were looking for a VIN (Vehicle Identification Number), and none was reported by the officer who "searched" the car.

The collective purpose stated by the officer for the "search" of the car was "to find out who the vehicle was registered to," or to try to find out "whose it was" without further valid reasons under these circumstances does not justify the "search," in my view.

This information could have been obtained from the license tag or license number through the Motor Vehicle Registrar's office or microfilmed information on this subject which is available in police departments. Once the person in whose name the vehicle was registered was known, it would have been a relatively simple process to find out if such person was the owner and, if so, did he give permission to anyone to use the car; and, if so, to whom; or if it had been stolen; or if he had sold the car and, if he did, to whom. The testimony as a whole does not disclose that a justifiable need existed for the "search" of the car without a warrant.

I, therefore, agree with the majority opinion. Having reached this conclusion, I do not believe any further comment is necessary, particularly as to the "green substance, plant material." If the "search" otherwise were valid I would not, without a further showing of compelling reasons, consider objectionable the evidence as to what was found, including the "green substance, plant material," merely because it was identified as green plant material.

PAULSON, J., concurs.

1.  The recent cases of *Stone, Warden v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d ——, Supreme Court of the United States, decided July 6, 1976; and *United States v. Janis,* —— U.S. ——, 96 S.Ct. 3021, 49 L.Ed.2d ——, Supreme Court of the United States, decided July 6, 1976, together with their footnotes, indicate that there is a need for revision of some case law and that a change may be in the process of developing, but until this occurs we must abide by the current decisions, even though a substantial number of legal scholars and writers are questioning or doubting that the exclusionary rule is accomplishing its stated purpose and whether the societal cost is worth the rule.