Claremont District Court
No. 83-173

# THE STATE OF NEW HAMPSHIRE

v.

# MARY SUE BALDWIN

April 13, 1984

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief and orally), for the State.

*Decato & Cirone P.A.*, of Lebanon (*R. Peter Decato* on the brief and orally), for the defendant.

KING, C.J. This case arises on an interlocutory transfer without ruling from the Claremont District Court (*Burling*, J.). At issue is the constitutionality of a road check conducted, during deer season, by officers of the New Hampshire State Police and the New Hampshire Fish and Game Department for the combined purpose of uncovering motor vehicle violations and violations of the fish and game laws.

The facts from which this case arose are agreed to be as follows. On November 14, 1982, the State police, assisted by officers of the New Hampshire Fish and Game Department, conducted a road check at the junction of routes 11 and 103 in Claremont, near the Ascutney Bridge. This road check, which had been "pre-planned" and "pre-coordinated" by the two departments, was conducted for the joint purpose of determining compliance with motor vehicle licensing and registration laws and with fish and game laws.

At approximately 5:00 p.m. on November 14, 1982, the defendant, Mary Sue Baldwin, crossed into New Hampshire from Vermont via the Ascutney Bridge. Once across the bridge, she noticed that police personnel were systematically stopping each of the cars in front of her. As she approached the "road check," a State trooper, later identified as Trooper McPhee, similarly approached her vehicle. He shone his flashlight first onto her license plate and then onto her inspection sticker as he proceeded to her driver's side window.

The defendant contends that Trooper McPhee inquired as to whether she had any weapons or deer, to which she responded, "Yea, millions of them." Although there is no dispute as to the defendant's response, Trooper McPhee, upon testifying before the district court, recalled inquiring solely as to whether the defendant had any weapons.

Based upon her response to the question posed by Trooper McPhee, the defendant was immediately ordered to pull her vehicle over to the side of the road, where further discussion ensued culminating in her arrest. The defendant was charged with four misdemeanors: (1) disobeying a police officer (RSA 265:4); (2) resisting arrest (RSA 642:2); (3) simple assault (RSA 631:2-a) and (4) transportation of a controlled drug in violation of RSA chapter 318-B (RSA 265:80). The defendant was also arrested for the felonious possession of a controlled drug (subsequent) (RSA 318-B:26 (Supp. 1981)). She was later indicted on this charge, however, by the Sullivan County Grand Jury, and jurisdiction over the charge by the Claremont District Court was transferred to the Sullivan County Superior Court.

Prior to her trial in district court on the four remaining charges, the defendant filed a motion to suppress evidence. She alleged in part that the State of New Hampshire, by subjecting her to an illegal road check in contravention of her rights under the fourth amendment of the United States Constitution, made an "unreasonable" seizure of her person and, therefore, that all evidence gathered as a result of the seizure should be suppressed. She further alleged that the illegal seizure tainted her subsequent arrest and thus all

charges against her should be dismissed. Prior to ruling on the motion, the district court transferred four questions, each pertaining to the constitutionality of the challenged road check, to this court for resolution.

We have chosen to address simultaneously the four questions transferred by the district court. We will address each of them with regard solely to the Federal Constitution since the defendant's motion to suppress, which is presently before the district court, does not raise any State constitutional issues.

"A. When fish & game officers assist State police officers in conducting road checks, and they do so admittedly to permit themselves to look for violations of fish & game laws, does the road check, as a matter of law, become a 'subterfuge for uncovering evidence of other crimes' as that phrase is used in *State v. Severance*, 108 N.H. 404?

B. Where State police officials contact fish & game officials during deer season for the purpose of determining whether fish & game officials would like to assist at road checks conducted by State police officials during deer season, is this a 'good faith' road check conducted for the purpose of inspecting motor vehicle licenses and registration certificates, or is it to be considered a subterfuge for uncovering evidence of other crimes? *See State v. Severance*, 108 N.H. 404.

C. Where a 'road check' is used not only to inspect the road worthiness of motor vehicles and licenses and registration certificates, but also to check if motor vehicle operators and passengers have illegal game in their possession or loaded firearms or other weapons which may be violative of general law, does this constitute the road check a bad faith road check?

D. Under the facts and circumstances as set forth in the stipulation of facts, is the permissibility of the road check to be adjudged by a balancing test whereby the intrusion on the individual's fourth amendment interests would be balanced against the particular governmental interests seeking to be promoted? If the answer to this question is in the affirmative, under the facts as stated is the particular law enforcement practice to be adjudged permissible?"

The fourth amendment of the United States Constitution

grants to all people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The essential purpose of this amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967).

In *State v. Landry*, 116 N.H. 288, 358 A.2d 661 (1976), this court held that whenever a police officer stops a motor vehicle, even if the purpose of the stop is limited and the resulting detention quite brief, "he has 'seized' it and its occupants within the purview of the fourth amendment to the Federal Constitution." *Id.* at 289, 358 A.2d at 663; *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see Terry v. Ohio*, 392 U.S. 1, 16 (1968). An individual, therefore, who is forced to stop by police for a brief road check has in fact been "seized." The reasonableness of his "seizure" depends, as in all cases adjudged under the provisions of the fourth amendment, upon "the balance between the public interest in law enforcement and the individual's right to personal security free from arbitrary action by law officers." *State v. Landry, supra* at 289, 358 A.2d at 663; *see Delaware v. Prouse, supra* at 654; *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *Terry v. Ohio, supra* at 20–21.

In *State v. Severance*, 108 N.H. 404, 237 A.2d 683 (1968), this court addressed the constitutionality of a road check conducted by State police to determine motorist compliance with State licensing and registration laws. In *Severance*, the State police conducted a road check in which all motorists in one lane of traffic were systematically stopped, without any individualized suspicion, for a routine inspection to ascertain whether each operator had a valid driver's license and whether each motor vehicle was properly registered. *Id.* at 406, 237 A.2d at 684.

Upon upholding the validity of the road check, this court held that any State "has a legitimate interest in the roadworthiness of automobiles which transport, but which can maim and kill . . . [.] This comprehends both technical fitness of the driver and the mechanical fitness of the machine. After the event, it is always too late. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the inspection may produce the irrefutable proof that the law has just been violated." *Id.* at 406; 237 A.2d at 685 (quoting *Myricks v. United States*, 370 F.2d 901, 904 (5th Cir. 1967)).

■ Balancing the State's interest in keeping its roadways safe for travel against the momentary inconvenience and minimal intrusion upon the privacy of each driver forced to stop at the road check, this court in *Severance* upheld the validity and "reasonableness" of the check. *Id.* at 406–07, 237 A.2d at 685. We concluded that "a road check for the good faith purpose of inspecting motor vehicle licenses and registration certificates is authorized by our statutes and is a constitutionally valid method of enforcing public safety so long as the road check is not used as a subterfuge for uncovering evidence of other crimes." *Id.* at 408; 237 A.2d at 686.

Other State and federal courts have similarly upheld the validity of road checks conducted to determine compliance with motor vehicle licensing and registration laws. *See United States v. Prichard,* 645 F.2d 854, 856–57 (10th Cir.), *cert. denied,* 454 U.S. 832 (1981); *United States v. Miller,* 608 F.2d 1089, 1093, 1098 (5th Cir. 1979), *cert. denied,* 447 U.S. 926 (1980); *State v. Shankle,* 647 P.2d 959, 962 (Or. App. 1982).

In *Delaware v. Prouse,* 440 U.S. 648, 663 (1979), the United States Supreme Court held "unreasonable" random spot checks of vehicles conducted by police to check each driver's license and registration, when conducted without any articulable and reasonable suspicion that a particular motorist was unlicensed, or that his vehicle was unregistered or that either the vehicle or the occupant was otherwise subject to seizure for a violation of the law. *Id.* In reaching its conclusion, the Court held that a State's interest in conducting discretionary and random spot checks of vehicles, as a means of ensuring the safety of its roadways, did not outweigh the resulting intrusion upon the privacy and security of the persons detained. *Id.* at 659. The Court further noted, however, that "[t]his holding does not preclude . . . States from developing methods for spot checks that involve *less intrusion* or that do not involve the *unconstrained exercise* of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Id.* at 663 (emphasis added).

In *United States v. Martinez-Fuerte,* 428 U.S. 543, 562 (1976), the Supreme Court upheld the constitutionality of a check of all vehicles, conducted at a permanent border checkpoint, to determine the presence of illegal aliens. The Court upheld the checks, conducted without any individualized suspicion, based upon a rationale that checkpoint operations (1) involve less discretionary enforcement activity than roving-patrol stops and (2) are less intrusive than such stops because they generate less concern or even fright on the part of lawful travelers. *Id.* at 559.

The use of road checks has not been limited by the courts exclusively to checks for compliance with motor vehicle licensing and

registration laws. Employing a fourth amendment balancing test, courts have upheld the validity of road checks conducted for a number of different purposes, in each instance concluding that the State's interest in conducting the road check outweighed the momentary inconvenience and minimal intrusion upon the privacy of each driver forced to stop. *See United States v. Martinez-Fuerte,* 428 U.S. 543 (1976) (routine stops at permanent checkpoints near border to check for illegal aliens); *People v. Meitz,* 95 Ill. App. 3d 1033, 420 N.E.2d 1119 (1981) (stop of all vehicles meeting particular description leaving parking lot to check for stolen vehicles); *People v. Shaffer,* 49 Ill. App. 3d 207, 364 N.E.2d 109 (1977) (road block to question passengers about hit-and-run accident which occurred on the same road one day earlier); *State v. Coccomo,* 177 N.J. Super. 575, 427 A.2d 131 (1980) (check for drunk drivers); *State v. Tourtillott,* 618 P.2d 423 (Or. 1980), *cert. denied,* 451 U.S. 972 (1981) (game check).

■■ In responding directly to the first three questions posed by the district court, we hold that the mere fact that the State, in the instant case, conducted a single road check for a combination of purposes will not automatically render the check unconstitutional. Rather, to determine the constitutionality of such a joint road check, a court must utilize the fourth amendment balancing test and determine whether a road check conducted independently by each of the participating agencies, for its own specified purpose, would be constitutional. Members of a given State agency will not be permitted to participate in road checks, which they independently have no authority to conduct, simply by teaming up with members of another State agency who *do* have the necessary power to conduct such checks.

■■ Should a court, however, ultimately determine that each aspect of a joint road check, if conducted independently, would have been constitutional, the mere fact that two or more State agencies joined together to conduct a single check for a combination of purposes will not automatically render the check unconstitutional. A road check becomes a "subterfuge for uncovering evidence of other crimes" only when the State uses a road check for a purpose other than one of its constitutionally valid and specified purposes.

In the instant case, the two specified purposes of the road check were to check for violations of motor vehicle licensing and registration laws and for violations of fish and game laws. There appears to be no dispute as to the fact that the State police could legally have conducted an independent road check to determine motorists' compliance with motor vehicle licensing and registration laws. *See State*

*v. Severance*, 108 N.H. 404, 237 A.2d 683 (1968). The sole remaining issues for the court to resolve, therefore, in determining the constitutionality of the road check in question, are whether the fish and game officers could have, independently, conducted a valid road check solely for the purpose of uncovering violations of fish and game laws; and, if so, whether the combined road check actually conducted in this instance was in fact carried out in a proper manner and limited in its scope to its constitutionally valid and specified purposes.

In determining the constitutionality of a road check conducted solely by fish and game officers to determine compliance with the State's fish and game laws, this court would be required to determine, first, whether fish and game officers possess the requisite power to conduct such checks and, second, whether such checks are "reasonable" based upon a balancing of the State's interest in the enforcement of its fish and game laws against each citizen's right to be free from unreasonable seizures. *See State v. Tourtillott*, 618 P.2d 423, 429–30 (Or. 1980); *State v. Halverson*, 277 N.W.2d 723, 724 (S.D. 1979).

Based upon the facts presented in this case, however, we need not make these determinations at this time. In the instant case, the question posed to the defendant while she was stopped at the road check, as to whether she had any weapons, clearly exceeded the scope of any permissible road check to determine compliance with fish and game laws.

██ The State contends that this particular question was posed to the defendant specifically to determine compliance with the fish and game provision contained in RSA 207:7, II (Supp. 1983), which mandates that "[n]o person shall have or carry, in or on a motor vehicle . . . whether moving or stationary, a loaded rifle or loaded shotgun with a cartridge in a magazine or clip attached to the gun." We find, however, that the question posed was much too broad and thereby inquired into an area which went beyond the scope of any possible fish and game check. When the State, in conducting a road check for any constitutionally valid and specified purpose, begins to inquire into areas which go beyond the scope of those necessary to achieve its express purpose, the check then becomes "unreasonable"—an impermissible "subterfuge for uncovering evidence of other crimes." *State v. Severance*, 108 N.H. 404, 408, 237 A.2d 683, 686 (1968).

██ We therefore hold, in response to the final question posed by the district court, that the road check conducted jointly in this case by officers of the State police and the New Hampshire Fish and

Game Department was unconstitutional as to this defendant. The scope of the question posed to the defendant clearly exceeded the bounds of any permissible check to determine compliance with this State's motor vehicle licensing and registration or fish and game laws.

Based upon this holding, we need not address a number of other questions, pertaining to the manner in which this particular road check was carried out, which may also have had some bearing upon the constitutionality of the check. We remand this case to the district court for further proceedings in accordance with this opinion.

*Remanded.*

.All concurred.