Concord District Court
No. 85-006

# The State of New Hampshire

## v.

## Donald L. Koppel

# The State of New Hampshire

## v.

## Norman B. Forest, Jr.

August 16, 1985

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, attorney, on the brief and orally), for the State.

*Perkins, Phillips & Waters P.A.*, of Concord (*Roger B. Phillips* on the brief and orally), for the defendants.

BROCK, J.  The defendants in these cases were arrested at roadblocks set up by the Concord Police Department to detect and apprehend drunk drivers. Each was charged with driving while under the influence of intoxicating liquor (DWI). RSA 265:82 (Supp. 1983). In advance of trial, both moved to suppress certain items of evidence, arguing that the use of the roadblocks by the police violated their rights under the State and Federal Constitutions. The motions were consolidated for hearing, after which the District Court (*Robbins*, J.) denied both motions. Upon request of the defendants, the issue of the roadblocks' constitutionality was transferred to this court, pursuant to RSA 502-A:17-a. The following questions of law were transferred:

"A.  Whether police conduct using roadblocks specifically established for the purpose of determining whether the driver of a motor vehicle is driving under the influence of an intoxicating liquor in violation of New Hampshire RSA 265:82, violates a defendant's constitutional guarantees against unreasonable searches and seizures as provided by part 1, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution?

"B.  Whether the New Hampshire Supreme Court's ruling in the case of *State v. Severance*, 108 N.H. 404 (1968), in which it was stated that a roadblock 'for the good faith purpose of inspecting motor vehicle licenses and registration certificates is a valid method of enforcing public safety so long as the roadcheck is not used as a subterfuge for uncovering evidence of other crimes,' prohibits roadblocks specifically established for the purpose of determining whether the driver of a motor vehicle is driving while

under the influence of intoxicating liquor in violation of New Hampshire RSA 265:82?"

For the reasons that follow, we hold that the roadblocks in these cases failed to meet constitutional standards, and we reverse the trial court's denial of the motions to suppress.

The Concord Police Department inplemented a program of drunk driving roadblocks in April 1984. The basis for the program was a document, drafted by a planning and research officer in the department, describing a "Standard Operating Procedure" (SOP).

The SOP stressed several points: that the roadblock should involve "minimal intrusion"; that its location should be determined "by an official based upon objective data (i.e., the number of accidents, injury accidents and/or DWI arrests)"; that "the decision as to which vehicles will be stopped (e.g., all east-bound vehicles, or every 10th vehicle) cannot be left to the discretion of the officers at the scene but must be made in advance"; and that "the checkpoint must be clearly indicated and manned by uniformed officers." It is conceded by the State in its brief that "[t]he purpose of the roadblocks is to detect operators who may be driving under the influence of alcoholic beverages . . . ."

The record indicates that 47 roadblocks were set up on 21 weekend nights between April 29, 1984, and October 20, 1984. A total of 1,680 vehicles were stopped, resulting in only 18 DWI arrests. During roughly the same six months, the Concord police made 175 DWI arrests by traditional methods; i.e., through the use of roving patrols.

The defendant Koppel was arrested on July 7, 1984, at 1:00 a.m., at a roadblock on Loudon Road near the Everett Arena. The defendant Forest was arrested on August 5, 1984, at approximately 1:35 a.m., at a roadblock on East Side Drive, at the end of an exit ramp from Interstate Route 393.

Both roadblocks consisted of three or more marked police cars parked at or near the side of the road with their lights on, accompanied by several officers wearing reflectorized clothing. In at least one case, the officer primarily responsible for stopping traffic was illuminated with a spotlight.

When traffic was light, every car approaching the roadblock was stopped. If five cars were detained at the roadblock, other traffic was waved on until a car left the roadblock, at which time the next car to approach would be detained.

There were no signs warning drivers of either roadblock, nor any advance publicity of their occurrence. A driver stopped at either roadblock had no way of learning its purpose except from the offi-

cers manning the roadblock. In the case of the Loudon Road road-block, it would have been impossible for a driver approaching the roadblock to avoid it, because the road is a divided highway at that point.

The defendants have challenged the validity of the roadblocks under both part I, article 19 of the New Hampshire Constitution and the fourth amendment of the United States Constitution. We begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). Thereafter, we need address federal constitutional issues only insofar as federal law would provide greater protection. *State v. Ball*, 124 N.H. at 232, 471 A.2d at 351.

■ Part I, article 19 gives every citizen of the State "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." Although this language is similar to that in the Federal Constitution, this court has held that article 19 provides greater protection for individual rights than does the fourth amendment. *State v. Ball, supra* at 235, 471 A.2d at 353; *State v. Sidebotham*, 124 N.H. 682, 686–87, 474 A.2d 1377, 1379–80 (1984).

■ It is commonly recognized that the stopping of a motor vehicle is not a mere "encounter" as described in *Terry v. Ohio*, 392 U.S. 1, 13–14 (1968), but is a more intrusive seizure subject to greater constitutional limitations. *See People v. John BB.*, 56 N.Y.2d 482, 487, 438 N.E.2d 864, 866, 453 N.Y.S.2d 158, 161, *cert. denied*, 459 U.S. 1010 (1982); *cf Berkemer v. McCarty*, 104 S. Ct. 3138, 3150 (1984). Stopping and detaining an automobile and its occupants, whether by roving patrol or roving roadblock, constitutes a seizure within the meaning of article 19 of our State Constitution. *See State v. Landry*, 116 N.H. 288, 289, 358 A.2d 661, 663 (1976) (construing fourth amendment). In *State v. Ball*, we reiterated that "we interpret part I, article 19 to reflect the intent of the framers that all searches and seizures must be reasonable. Unless a warrantless search [or seizure] falls within one of the few specifically established and well-delineated exceptions, it is *per se* unreasonble." *Ball, supra* at 234, 471 A.2d at 362.

The State argues that an exception to the warrant requirement exists in this case, and points to a test that we have previously applied in fourth amendment cases. In *State v. Landry*, we held that

"the reasonableness of such a seizure [of an automobile] depends on the balance between the public interest in law enforcement and the individual's right to personal security free from aribtrary action by law officers. More specifically in a case like this one [involving the stop of a single vehicle by a roving patrol] the competing considerations are the State's compelling interest in maintaining safety on the public highways and the motorist's reasonable expectation of privacy when he is traveling on these highways in his automobile."

*Landry*, 116 N.H. at 289–90, 358 A.2d at 663. *See also State v. Baldwin*, 124 N.H. 770, 774, 475 A.2d 522, 524 (1984).

We had earlier applied a similar test in *State v. Severance*, 108 N.H. 404, 237 A.2d 683 (1968). *Severance* involved a police roadblock, the alleged purpose of which was to check for proper licenses and registrations. We held that a roadblock used for such purposes was "a constitutionally valid method of enforcing public safety so long as the road check is not used as a subterfuge for uncovering evidence of other crimes." *Id.* at 408, 237 A.2d at 686.

Our holding in *Severance* was based on the demonstrable fact that road checks were the only effective means available to law enforcement authorities of enforcing the license and registration laws. *Id.* at 407, 237 A.2d at 685 (citing *Commonwealth v. Mitchell*, 355 S.W.2d 686, 688–89 (Ky. 1962)). However, in *Delaware v. Prouse*, 440 U.S. 648 (1979), the United States Supreme Court held that the fourth amendment requires strict limits on the type of road check that can be used even for so limited a purpose.

Applying a test similar to the one we used in *Landry* and *Severance, see Prouse*, 440 U.S. at 654, the Court held that "spot checks," carried out at the discretion of individual police officers, were an impermissible means of enforcing license and registration laws.

The Court agreed "that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." *Id.* at 658. The Court, however, went on to say:

"It seems common sense that the percentage of all drivers on the road who are driving without a license is very small and that the number of licensed drivers who will be stopped in order to find one unlicensed operator will be large indeed. The contribution to highway safety made by discretionary stops selected from among drivers generally will therefore be marginal at best."

*Id.* at 659–50.

The Court concluded that this "marginal contribution to roadway safety . . . cannot justify subjecting every occupant of every vehicle on the roads to a seizure . . . at the unbridled discretion of law enforcement officials." *Id.* at 661. It noted, however, that

> "[t]his holding does not preclude . . . States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative."

*Id.* at 663.

The Court's dictum in *Prouse* has been cited frequently as authority for upholding the constitutionality of drunk-driving roadblocks. *E.g., State v. Super. Ct. in & for County of Pima*, 691 P.2d 1073, 1076–77 (Ariz. 1984); *Little v. State*, 300 Md. 485, 498, 479 A.2d 903, 909 (1984); *State v. Deskins*, 234 Kan. 529, 540–42, 673 P.2d 1174, 1179 (1983). At the outset, however, we note two major features of this case that distinguish it from the *Prouse* dictum: (1) the defendants here have invoked the protection, not merely of the fourth amendment, but also of part I, article 19 of the State Constitution; and (2), unlike the spot checks in *Prouse*, the roadblocks here in question were conducted to discover evidence to be used in the prosecution of serious criminal offenses.

Our construction of article 19 has, as noted above, varied significantly from fourth amendment doctrine. In *State v. Ball*, we held that seizure of a hand-rolled cigarette from an automobile, based on mere suspicion that it contained contraband, was unconstitutional. *Ball*, 124 N.H. at 237, 471 A.2d at 354 (departing from fourth amendment analysis in *Texas v. Brown*, 460 U.S. 730 (1983)).

Similarly, in *State v. Sidebotham*, a majority of the court held that "a defendant . . . charged . . . with an offense arising out of his possession of a motor vehicle, must be afforded 'automatic standing' . . . to challenge the legality of any search of that motor vehicle . . . ." *Sidebotham*, 124 N.H. at 687, 474 A.2d at 1379–80 (rejecting "expectation of privacy" rule of *United States v. Salvucci*, 448 U.S. 83 (1980)).

██ These cases and others have established that, where the search or seizure of a motor vehicle is involved, article 19 provides significantly greater protection than the fourth amendment against intrusion by the State. Accordingly, in evaluating the constitutionality of a warrantless search or seizure, we will apply a more stringent test in cases like this one than we applied in *Landry*. To justify

the search or seizure of a motor vehicle, absent probable cause or even a reasonable suspicion that a criminal offense is being committed, the State must prove that its conduct significantly advances the public interest in a manner that outweighs the accompanying intrusion on individual rights. It must further prove that no less intrusive means are available to accomplish the State's goal.

Such a test was implicit in *Severance*, where we noted, as mentioned above, that road checks were the only practical means of detecting unlicensed drivers and unregistered cars. Here, the admitted purpose of the roadblocks in the instant case becomes crucial. As the Appellate Court of Illinois has said:

> "[I]n cases where the Supreme Court has either expressly or impliedly sanctioned checkpoint stops, the criminal activity targeted was of such a nature that there was no other less intrusive but equally effective means of detecting violators. Transporters of illegal aliens and violators of license and safety equipment laws can rarely be detected by observing traffic.
>
> "In contrast, the foremost method of detecting drunk drivers has been by observing driving behavior."

*People v. Bartley*, 466 N.E.2d 346, 348 (Ill. App. Ct. 1984) (citing *Prouse* and *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)); *see also State v. Smith*, 674 P.2d 562, 565 (Okla. Crim. App. 1984).

█ We agree that the State's interest in detecting drunk drivers is great. *See South Dakota v. Neville*, 459 U.S. 553, 558–59 (1983). The validity of these roadblocks, however, depends first, on whether they are more effective toward advancing this interest than other, less intrusive means; and second, on whether their value outweighs the degree of intrusion they involve.

The statistics cited earlier for the Concord roadblocks bear out the *Bartley* court's view that roadblocks are not a particularly effective means of *detecting* drunk drivers. For each 100 vehicles "seized" and detained by the police for a period of one to five minutes, only one arrest for driving under the influence was made. Like the spot checks in *Prouse*, it appears that an inordinate number of law-abiding citizens must be stopped at roadblocks in order to make only a few arrests. The trial court could not find, on this record, that roadblocks are any more effective at detecting drunk drivers than other, substantially less intrusive, means.

In its brief, the State also alluded to the possibility that roadblocks *deter* drunk driving. Notwithstanding the fact that there is

no evidence in the record regarding the potential deterrent effect of the roadblocks in this case, other courts have recognized that roadblocks may have a deterrent impact on drunk driving. *Little v. State*, 300 Md. at 505–06, 479 A.2d at 913; *People v. Scott*, 483 N.Y.S.2d 649, 652–54, 473 N.E.2d 1, 4–6 (1984).

We agree that roadblocks may have such an effect and that in determining whether such roadblocks advance the public interest so as to outweigh the accompanying intrusion on individual rights, or whether less intrusive means are available to accomplish the State's goal, we should separately consider the deterrent effect. Accordingly, we consider whether the roadblocks in this case were so intrusive on individual rights as to exceed constitutional limits, notwithstanding their value as a deterrent. We hold that they were.

As the *Scott* court pointed out, it is *publicity* about roadblocks that is "the chief means of deterring driving while intoxicated," *People v. Scott*, 483 N.Y.S.2d at 652, 473 N.E.2d at 4 (citing a 1983 paper on Safety Checkpoints For DWI Enforcement issued by the Department of Transportation's National Highway Traffic Safety Administration's Office of Alcohol Countermeasures). Although we have no doubt that many people learned of the Concord roadblock program after it began, its potential deterrent value was lessened, and its potential for surprise was increased, by the lack of advance publicity.

More important, there is nothing in this record, nor in decisions from other jurisdictions, to indicate that a roadblock program has any greater deterrent value than a well-publicized program of highly visible roving patrols. To justify the greater intrusiveness of roadblocks, the State would have to prove that they had a substantially greater deterrent value than such a program. This has not been done.

As to the actual degree of intrusion involved, there is dictum to the effect that a roadblock of the type used in *Severance* involves only "momentary inconvenience and minimal intrusion . . . ." *State v. Baldwin*, 124 N.H. at 775, 475 A.2d at 525. As we have already noted, however, *Severance* involved a roadblock whose purpose— checking licenses and registrations—could not be accomplished by other methods; the *Baldwin* court's characterization of the roadblock should be read in that context.

The valid roadblock in *Martinez-Fuerte* also had a purpose— detection of smugglers and illegal aliens—for which it was the only effective means. It was also in a permanent location, and its existence and purpose were common knowledge. *Martinez-Fuerte*, 428 U.S. at 556, 559. Other courts have found important differences between that roadblock and a temporary, unpublicized drunk-

driving roadblock, usually set up only at night, sometimes poorly illuminated, whose purpose becomes known only when the driver is asked for his or her license. *See, e.g., People v. Bartley*, 466 N.E.2d at 348; *State v. Smith*, 674 P.2d at 565. A roadblock of the latter type produces a substantially greater amount of "subjective intrusion—the generation of concern or even fright on the part of lawful travelers," *Martinez-Fuerte*, 428 U.S. at 558, which both article 19 and the fourth amendment were intended to prevent.

We are also concerned here with a more subtle kind of intrusion. This was recognized by the Court of Criminal Appeals of Oklahoma, when it found that drunk-driving roadblocks,

> "while commendable in their ultimate goal of removing [drunk-driving] offenders from the public highways, draw dangerously close to what may be referred to as a police state. Here, the state agencies have ignored the presumption of innocence, assuming that criminal conduct must be occurring on the roads and highways, and have taken an 'end justifies the means' approach. The Court is not so naive to think that criminal conduct does not occur regularly in the form of [drunk-driving] offenders. Yet, a basic tenet of American jurisprudence is that the government cannot assume criminal conduct in effectuating a stop such as the one presented herein. Were the authorities allowed to maintain such activities as presented in this case, the next logical step would be to allow similar stops for searching out other types of criminal offenders. For example, it is well known to the public that shoplifting is an everyday occurrence . . . . Are law enforcement authorities then to be allowed to establish fixed checkpoints, permanent or otherwise, outside of every shopping center in the area to question all exiting shoppers as to whether they possess sales receipts? Are law enforcement authorities to be allowed to demand all shoppers to produce such receipts or be subject to arrest everytime they go shopping? The potential for abuse is apparent."

*State v. Smith*, 674 P.2d at 564–65.

■ Because the State has failed to show that drunk-driving roadblocks produce sufficient public benefit to outweigh their intrusion on individual rights, the case is remanded to the district court with instructions to grant the defendants' motions to suppress. Because our holding rests solely on our interpretation of the New Hampshire Constitution, we need not discuss the scope of protection

provided by the fourth amendment to the United States Constitution.

*Reversed and remanded.*

SOUTER, J., dissented; the others concurred.

SOUTER, J., dissenting: I respectfully dissent. This is the first case in which this court has relied expressly and exclusively on part I, article 19 of the State Constitution in considering the constitutionality of a police roadblock. Prior roadblock cases either did not distinguish between State and national constitutional standards, *see State v. Severance*, 108 N.H. 404, 237 A.2d 683 (1968), or rested on the fourth amendment, *see State v. Baldwin*, 124 N.H. 770, 475 A.2d 522 (1984). Today's decision applies a standard that is more restrictive than the limitations on police activity recognized in either of those cases. I dissent from the adoption of today's standard and from the result to which it leads the majority.

There is no question that stopping a car even for a brief period is of constitutional significance, for it is a limited "seizure" of the car and its occupants. *State v. Landry*, 116 N.H. 288, 358 A.2d 661 (1976); *Delaware v. Prouse*, 440 U.S. 648 (1979). The ultimate touchstone for determining the constitutionality of such a stop is the language of article 19, with its prohibition of "unreasonable" seizures. It is settled law that such a stop is reasonable and, hence, constitutional if the police have an articulable basis to suspect that a driver is operating under the influence of intoxicants (DWI). Although the police do not have probable cause to arrest, they may constitutionally stop the car to question and examine the driver. *State v. Brodeur*, 126 N.H. 411, 493 A.2d 1134 (1985); *State v. Arsenault*, 115 N.H. 109, 336 A.2d 244 (1975); *State v. Landry supra; Berkemer v. McCarty*, 104 S. Ct. 3138, 3150 (1984); *Terry v. Ohio*, 392 U.S. 1 (1968).

The articulable basis that justifies such a stop as reasonable for constitutional purposes normally consists of erratic or dangerous driving. In this case, however, we consider whether there are any circumstances in which the public interest in preventing and prosecuting DWI renders it reasonable for the police to stop a car before its driver has operated in such an exceptionable manner. The question posed is a narrow one: does article 19 allow the police to employ a systematic roadblock to stop and detain drivers for a brief time, in order to observe their condition for signs of the influence of intoxicants?

The court has never held that a roadblock to detect violations of motor vehicle laws is per se unreasonable, *see State v. Severance*

*supra* and *State v. Baldwin supra,* and I do not understand that the majority intends to hold that now. Rather, the question of the reasonableness of such a stop has turned on a traditional judicial balancing of the value of the roadblock to the State and broad public against its burden upon the individual drivers. For example, this court observed just last year that "[e]mploying a fourth amendment balancing test, courts have upheld the validity of road checks conducted for a number of different purposes, in each instance concluding that the State's interest in conducting the road check outweighed the momentary inconvenience and minimal intrusion upon the privacy of each driver forced to stop." *State v. Baldwin, supra* at 776, 475 A.2d at 525 (citations omitted). *See State v. Severance supra; Brown v. Texas,* 443 U.S. 47 (1979); *Delaware v. Prouse supra; see also State v. Landry supra.*

While the court today recognizes that such a comparative evaluation is necessary, the majority apparently do not employ the simple balancing test described in the preceding quotation. Rather, they state that the roadblock is improper unless it "significantly" advances the public interest in outweighing the individual disadvantage to given drivers who are stopped. Even assuming that such a weighted balancing test is appropriate, I could not join in the conclusion that the majority reach, for I believe that the evidence indicates that the value of the roadblocks in this case did significantly outweigh the minimal disadvantage to the drivers whose cars were stopped.

Looking first to the individual interests affected by a roadblock, we have already noted that an individual has a protected interest in privacy and security when driving a car. Absent an articulable basis for suspecting illegality, unbridled police discretion to stop a car is antithetical to the driver's protected interests. A limitation on such discretion in the form of criteria to be systematically applied should therefore be a required feature of any roadblock procedure that could survive constitutional scrutiny. *See Delaware v. Prouse, supra* at 663, and examples of State cases cited in the majority opinion.

I would hold that the criteria employed by the police in this case were constitutionally sufficient. They included standards for selecting the location of the stops, for identifying the cars to be stopped, for limiting the number of cars stopped to the number that the police could expeditiously handle, and for governing the conduct of the police during the stops. There is no evidence or suggestion that the police departed from these standards or acted arbitrarily with any discriminatory result.

Since the roadblocks did not carry the risk of unbridled police discretion, we must next evaluate the actual intrusions that they involved. There was evidence that the areas of the stops were well-lit and that the police explained the objects of the stop to each driver, thus precluding any undue apprehension about police intentions. While the majority emphasize the number of stops in relation to the number of violations later charged (i.e., in six months, 1680 vehicles stopped, resulting in 18 DWI arrests), the individual stops themselves were extremely brief. There was evidence that the police normally detained a car for two minutes or less. It is therefore difficult to imagine a more minimal actual intrusion.

Turning to the public interest served by the stops, there is no need of argument to establish the legitimacy of public concern to protect life, health and property on the highways. Nor is there need to argue that this interest would be served by detecting impairment caused by intoxicants before the impairment manifests itself in the sort of behavior that would justify an individual stop. *See State v. Landry supra.* It appears from the evidence that the public interest was actually so served by the roadblocks in issue here. While we do not know the number of DWI convictions that resulted from arrests at roadblocks, the record does reveal that about ten percent of DWI arrests by the Concord Police Department during a period of six months resulted from roadblock stops. Considering the high risks involved in DWI, this percentage is significant. We need not assign a weight, then, to the probable deterrent effect of publicity about the roadblocks, in order to conclude that roadblocks have real value.

Contrasting this significant public benefit with the minimal private intrusion, I conclude that the roadblocks in question did not result in unreasonable seizures. Just as we held license and registration checks constitutional in *State v. Severance*, 108 N.H. 404, 237 A.2d 683 (1968), I would hold these roadblocks constitutional under article 19, reaffirming the rule that "'[t]he State can practice preventative [sic] therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal.'" *Id.*, at 406, 237 A.2d at 685 (quoting *Myricks v. United States*, 370 F.2d 901, 904 (5th Cir. 1967)).

Before concluding, however, I believe that I should speak to the final note of the majority opinion, which quotes the Supreme Court of Oklahoma in raising the spectre of a "police state" if DWI roadblocks should be allowed. *See State v. Smith*, 674 P.2d 562, 564–65 (Okla. 1984). The Oklahoma court suggests that if the State could stop all drivers to detect DWI, it could stop all pedestrians to detect

shoplifting. The justices of that court thus see roadblocks as the thin· end of a constitutional wedge.

The suggestion is unjustifiable, however. Shopping, like most other normal public pursuits, is not so fraught with risk to others as to be a regulated activity. Driving a car, conversely, is a public pursuit that raises just such a risk and is pervasively regulated in order to mitigate its potential danger. Measures that would be reasonable in policing activities of great risk would not be reasonable as intrusions into the characteristically safe and innocent pursuits of social life. The suggestion of the Oklahoma judges ignores these distinctions. I believe that the constitution is well-served by recognizing them. I therefore dissent, despite my respect for the concern that prompts my Brothers to rule as they do.