2013 Ark. 35

**STATE of Arkansas, Appellant**

v.

**Robert M. ALLEN, Appellee.**

**No. CR 12–568.**

Supreme Court of Arkansas.

Feb. 7, 2013.

Rehearing Denied March 14, 2013.

Dustin McDaniel, Att'y. Gen., by: LeaAnn J. Adams, Ass't. Att'y. Gen., for appellant.

Hurst, Morrissey & Hurst, PLLC, Hot Springs, by: Q. Byrum Hurst, Jr., for appellee.

JIM HANNAH, Chief Justice.

The State of Arkansas appeals a decision of the Garland County Circuit Court that the stop of Robert M. Allen's vessel "under ... the circumstances was unreasonable and violated [Allen's] rights under the Fourth Amendment to the United States Constitution." Upon stopping Allen and boarding his boat to perform a safety check, Sergeant Glenn Tucker of the enforcement division of the Arkansas Game and Fish Commission concluded that Allen was under the influence of alcohol. Sergeant Tucker arrested Allen, and he was charged with boating while intoxicated.

Allen entered a no-contest plea in the District Court of Hot Springs, Arkansas, and he appealed his conviction to the Garland County Circuit Court. In the circuit court, he filed a motion to dismiss, alleging that the "Arkansas Game and Fish officers had no authority to stop and arrest him," and that "there was a complete lack of probable cause for this Defendant's [Allen's] stop." At the hearing on the motion, Sergeant Tucker testified that "[t]here was no probable cause or any violation of law that preceded the stop of Mr. Allen." According to Sergeant Tucker, he stopped vessels, such as Allen's, "to check for safety compliance, such as life jackets and other safety items that they are required to have on board their vessel." The circuit court granted the motion, concluding that granting "a law enforcement officer the unfettered right to stop and check a vessel at will removes" the Fourth Amendment requirement that "the stop must be reasonable under the circumstances." The circuit court found that where a vessel is "legally registered and illuminated, [and] ... being operated in an unremarkable fashion, by an adult with one adult passenger on an uncongested part of Lake Hamilton at 11:00 p.m. ... the stop of the Defendant's pontoon boat" was "unreasonable and violated Defendant's rights under the Fourth Amendment." The decision of the circuit court is affirmed.

This court must first determine whether it has jurisdiction to hear the State's appeal. *See State v. Jenkins*, 2011 Ark. 2, at 4, 2011 WL 143571. This court will not consider an appeal by the State "unless the correct and uniform administration of the criminal law requires review by the court." *See* Ark. R.App. P.Crim. 3(d). As a matter of practice, this court only reviews State appeals that are narrow

in scope and involve the interpretation of law. *Jenkins*, 2011 Ark. 2, at 4, 2011 WL 143571. We do not permit State appeals merely to demonstrate that the circuit court erred. *Id.* Moreover, this court will not accept an appeal by the State where the circuit court has acted within its discretion after making an evidentiary decision based on the particular facts of the case or even on a mixed question of law and fact, as those appeals do not require interpretation of our criminal rules with widespread ramifications. *Jenkins*, 2011 Ark. 2, at 5, 2011 WL 143571. |₃At issue in the present case is whether, in the absence of objective facts supporting the stop or a plan embodying explicit neutral limitations, a law-enforcement officer's practice of stopping vessels on bodies of water to perform a safety check constitutes an act of unfettered discretion by law enforcement that violates the Fourth Amendment to the United States Constitution. We concur with the State that the correct and uniform administration of the criminal law requires our review of this matter.

The State argues that Sergeant Tucker acted under section 27–101–105, which provides in relevant part as follows:

(a)(1)(A) It shall be the duty of every sheriff, deputy sheriff, state police officer, and enforcement officer of the Arkansas State Game and Fish Commission to enforce the provisions of this chapter....

(2) In the exercise of their duty to enforce the provisions of this chapter, they shall have the authority to stop and board any vessel subject to this chapter and to investigate any accident or violation involving vessels subject to this chapter.

Ark.Code Ann. § 27–101–105(a)(*l*), (2) (Repl.2010).

Sergeant Tucker testified that he is a certified law-enforcement officer and that he stops boats for safety checks. He testified that "[t]here was no determination on what boats I might pull over," and that he was not "pulling over every boat for a safety check." He said that "there was no plan in place" when he stopped Allen's boat that evening.

"The Fourth Amendment, of course, 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.'" *Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Whenever a law-enforcement officer stops and restrains a person, the officer has "seized" that person, and the Fourth Amendment requires that the seizure be  ₄reasonable. *Id.*

The reasonableness of seizures that are less intrusive than a traditional arrest, *see Dunaway v. New York,* 442 U.S. 200, 209–210 [99 S.Ct. 2248, 60 L.Ed.2d 824] (1979); *Terry v. Ohio,* 392 U.S. 1, 20 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' *Pennsylvania v. Mimms,* 434 U.S. 106, 109 [98 S.Ct. 330, 54 L.Ed.2d 331] (1977); *United States v. Brignoni–Ponce, supra,* 422 U.S. [873], at 878 [95 S.Ct. 2574, 45 L.Ed.2d 607]. Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *See, e.g.,* 422 U.S. [873], at 878–883 [95 S.Ct. 2574].

A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions

solely at the unfettered discretion of officers in the field. *See Delaware v. Prouse*, 440 U.S. 648, 654–655 [99 S.Ct. 1391, 59 L.Ed.2d 660] (1979); *United States v. Brignoni–Ponce, supra*, 422 U.S. [873], at 882 [95 S.Ct. 2574]. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

*Brown*, 443 U.S. at 50–51, 99 S.Ct. 2637.

■■ At issue is a brief stop by a law-enforcement officer to assure that a vessel complies with applicable safety requirements. It is a stop at the order of a law-enforcement officer and constitutes a seizure that is certainly less intrusive than a traditional arrest; however, it is a seizure and means that the law-enforcement officer is "lawfully present" and under a duty to act where the law enforcement officer reasonably suspects a crime has been or is about to be committed. *See* Ark. R.Crim. P. 3.1 (2012). A seizure under the Fourth Amendment must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual or that the seizure must be carried out under a plan embodying explicit, neutral limitations on the conduct of individual officers. *See Brown*, 443 U.S. at 51, 99 S.Ct. 2637. Regardless of how brief or slight the intrusion, or how weighty the public interest, "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Id.*

■ Sergeant Tucker testified that, while he tried to stop and perform a safety check on as many vessels as he could in a given day, there was no plan and nothing to determine which boats he stopped. There were no specific, objective facts about Allen's vessel to indicate that society's legitimate interests required the seizure of Allen and his particular vessel. As the circuit court found, Allen's vessel was being legally operated in an unremarkable fashion. Sergeant Tucker testified that he did not believe that he had "the unfettered discretion to pull over any boat at any time for any reason that [he desired]," but only to perform a safety check. However, this means that whether the stop is proper depends only on the law-enforcement officer's subjective assertion of his or her purpose when the Fourth Amendment requires objective facts supporting the stop or a plan embodying explicit, neutral limitations. As the circuit court found, the practice of safety-check stops by law-enforcement officers in this case violates the Fourth Amendment.

Affirmed.

HART, J., concurs.

DANIELSON, GOODSON, and HOOFMAN, JJ., dissent.

JOSEPHINE LINKER HART, Justice, concurring.

The dissent erroneously asserts that the majority has held that the statute at issue is unconstitutional. The majority has instead affirmed the circuit court's finding that the law-enforcement officer's conduct was unreasonable under the Fourth Amendment to the United States Constitution. The circuit court's analysis properly centered on the conduct of the law-enforcement officer. In a Fourth Amendment analysis of a warrantless search, we examine the statute as applied. As the United States Supreme Court has noted, "the question ... is not whether the search was authorized by state law. The

question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one." *Cooper v. State of Cal.*, 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). While Arkansas is "of course, free to develop its own law of search and seizure to meet the needs of local law enforcement ... and in the process it may call the standards it employs by any names it may choose," the State may not "authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct." *Sibron v. New York*, 392 U.S. 40, 60–61, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *see Knowles v. Iowa*, 525 U.S. 113, 116, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (noting that the "question we therefore address is whether the search at issue, authorized as it was by state law, nonetheless violates the Fourth Amendment"). Thus, in a Fourth Amendment analysis of a warrantless search, we consider the conduct of law enforcement and determine whether that conduct violates the defendant's Fourth Amendment rights. While normally our court does not engage in fact-intensive questions in State appeals, I agree with the circuit court's finding and the majority's holding that law enforcement's conduct violated Allen's Fourth Amendment rights.

PAUL E. DANIELSON, Justice, dissenting.

There are several problems with the majority's opinion that lead me to dissent. First, it affirms a finding of the circuit court that essentially, without specifically stating so, found the relevant statute unconstitutional without that argument being properly raised by either party or being fully developed. Secondly, even were the constitutionality issue properly before the court, the relevant statute is not unconstitutional.

As noted in the majority, Arkansas Code Annotated section 27–101–105 provides:

(a)(1)(A) It shall be the duty of every sheriff, deputy sheriff, state police officer, and enforcement officer of the Arkansas State Game and Fish Commission to enforce the provisions of this chapter, except that it shall be the duty of the Department of Health separately to enforce the provisions of § 27–101–401 et seq.

(B) Certified law enforcement officers of the Department of Parks and Tourism and municipal police officers may enforce the provisions of this chapter. (2) In the exercise of their duty to enforce the provisions of this chapter, *they shall have the authority to stop and board any vessel subject to this chapter* and to investigate any accident or violation involving vessels subject to this chapter.

(3) Upon investigation, they may direct the operator of any vessel in violation of this chapter to return to the dock where the voyage originated or to the nearest dock if appropriate.

Ark.Code Ann. § 27–101–105(a)(1)(3) (Repl.2010) (emphasis added).

Sergeant Tucker simply made a stop that Ark.Code Ann. § 27–101–105(a) gave him the authority to make. The circuit court found that the stop was not reasonable and the majority holds that "this practice of safety-check stops by law-enforcement officers violates the Fourth Amendment." This can only mean that the statute authorizing the practice violates the Fourth Amendment.

First, it was not argued below that the statute is unconstitutional. The defendant below argued that the stop was made with-

out probable cause. The circuit court agreed with the State that the officer did not need probable cause pursuant to the statute to stop and board Allen's boat. However, without the issue being raised by either party, the court found that $_8$the stop, authorized by the statute, violated Allen's Fourth–Amendment rights. This court has repeatedly held that when the constitutionality of a statute is challenged, the Attorney General of this state must be notified and is entitled to be heard. Ark. Code Ann. § 16–111–106(b) (Repl.2006); *see also Landers v. Jameson,* 355 Ark. 163, 132 S.W.3d 741 (2003). The purpose behind the notification to the Attorney General is to assure a "fully adversary and complete adjudication" of the constitutional issue. *See Arkansas Dep't of Human Servs. v. Heath,* 307 Ark. 147, 149, 817 S.W.2d 885, 886 (1991). While the Attorney General's office has displaced the prosecutor as the party on appeal, it is limited to what was argued below. Because it was not a party to this case at the circuit level, and because the court made its finding sua sponte, the Attorney General's office was not afforded the opportunity to develop an argument before the circuit court as to why the statute is in fact constitutional. For these reasons alone, the circuit court's finding should not be upheld here.

However, the majority opinion affirms the finding of the circuit court, and the "practice of safety-check stops" is held to violate the Fourth Amendment. Therefore, the statute authorizing that practice is struck down as unconstitutional. I cannot agree.

The Fourth Amendment requires government to respect "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." *Chandler v. Miller,* 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). This restraint on government conduct generally bars officials from undertaking a search or seizure absent individualized suspicion. *Id.* However, searches conducted without grounds for suspicion of particular individuals have been upheld in certain limited circumstances including brief stops for questioning or observation at a fixed border-patrol$_9$ checkpoint, at a sobriety checkpoint, and administrative inspections in closely-regulated businesses. *Id.* The stop of Allen's boat for a safety inspection falls within these limited circumstances and the statute properly authorizes such a suspicionless seizure.

In *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court stated that, "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." 440 U.S. at 654, 99 S.Ct. 1391. We have previously applied this test to a roadblock and held that the roadblock was reasonable and not violative of the Fourth Amendment. *See Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801 (1997). There, we weighed three factors: (1) the State's interest, (2) the degree to which the seizure advances its interest, and (3) the level of intrusion on an individual's privacy. *See id.* After considering those factors, we held that the roadblock was reasonable and, furthermore, based on the testimony presented regarding the field officers' discussion of the particular procedures and location for the roadblock with their superior officer, we held that there had been a "plan embodying explicit, neutral limitations on the conduct of individual officers." *Id.* at 49, 938 S.W.2d at 806 (quoting *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637 (1979)).

While stops on the water involve inherently different circumstances than road-

blocks, the same balancing test should lead us to conclude that Sergeant Tucker of the Arkansas Game and Fish Commission did not violate the Fourth Amendment by stopping Allen's boat for no other reason than a safety inspection. Certainly, the State has a great interest in maintaining safe conditions for boaters on Arkansas's waterways. Permitting officers to stop boats for Following safety checks directly advances the State's interest. It would be impossible for an officer to know if a boater was carrying the proper safety equipment without stopping his or her boat. Furthermore, the procedure is minimally invasive, as the officer merely stops the boat to check for safety compliance—a certain number of life jackets and other required safety equipment. Finally, Sergeant Tucker testified that he was "working boating law enforcement" on the day of Allen's arrest. He informed the court that while he had not pulled over every boat that day, he would typically stop a boat and do a safety check if he could do so safely and that he usually does try to check as many boats as he can. For these reasons, the safety check of Allen was in compliance with the statute and did not violate his Fourth-Amendment rights.

I am astounded that this court would issue an opinion that diminishes the State's ability to regulate our waterways and ensure the safety of the citizens who use them. Due to the precarious nature of waterways, it is impractical to look for the same type of "plan" as one might find for checkpoints on roadways. The protection of our citizens outweighs the slight intrusion on a boater when asked to stop for a safety inspection. While this is an issue of first impression in this state, other states with similar statutes have addressed this issue and upheld the statutes, failing to find any Fourth-Amendment violations. *See State v. Casal,* 410 So.2d 152 (Fla. 1982); *Peruzzi v. State,* 275 Ga. 333, 567 S.E.2d 15 (2002); *People v. Roe,* 48 Ill.2d 380, 270 N.E.2d 27 (1971); *State v. Giles,* 669 A.2d 192 (Me.1996); *State v. Colosimo,* 669 N.W.2d 1 (Minn.2003); *State v. Pike,* 139 N.C.App. 96, 532 S.E.2d 543 (2000); *Schenekl v. State,* 30 S.W.3d 412 (Tex. Crim.App.2000). The stop in the instant case and the statute permitting such a stop should be upheld in our state as well.

GOODSON and HOOFMAN, JJ., join.

CLIFF HOOFMAN, Justice, dissenting.

I join Justice DANIELSON'S dissent. However, I write separately to emphasize that it is my belief that the majority is in fact holding Arkansas Code Annotated section 27–101–105 unconstitutional.

The majority holds that, in this particular case, where there are no specific, objective facts to support stopping Allen's boat for a safety check, the stop violates the Fourth Amendment. Specifically, it states that "a law-enforcement officer's practice of stopping vessels on bodies of water to perform a safety check constitutes an act of unfettered discretion by law enforcement that violates the Fourth Amendment to the United States Constitution."

Although the majority cites to section 27–101–105, it gives no moment to the actual wording of that statute. That statutory provision confers absolute authority to law-enforcement officers to stop and board any boat to enforce the provisions of the chapter. Several provisions of the chapter would require the officer to board the vessel to check for compliance, such as checking for adequate flotation devices, including personal life vests; checking for proper ventilation when carrying inflammable or toxic fluid in any enclosure; and checking for properly attached lanyards. *See* Ark.Code Ann. § 27–101–203 (Repl. 2010). Section 27–101–105 contains no limitation on the power of law-enforcement

officers to stop and board a boat to perform a safety check to enforce these provisions, and the statute does not require that law-enforcement officers performing safety checks have a plan embodying explicit, neutral limitations.

Following Here, Sergeant Tucker testified that he was working boating law enforcement on the day of the incident; that he would stop a particular vessel if he observed a specific violation; that he also stopped and boarded vessels to check for safety compliance; that he stopped Allen's vessel to conduct a safety check for life jackets; and that after he stopped Allen to perform the safety check, he noticed the strong odor of intoxicants.

Yet, the majority holds that because this officer did not have a plan embodying explicit, neutral limitations or objective facts to support the stop of Allen's boat to perform a safety check, which is clearly permitted by the statute in all situations, the officer violated Allen's constitutional rights. It seems obvious to me that the effect of the circuit court's ruling, which this majority affirms, eviscerates the statute as written. Officers no longer have the authority to stop and board any vessel to enforce the provisions of the statute and perform a safety check *unless* they have objective facts supporting the stop or a plan embodying explicit, neutral limitations. Therefore, the effect of the majority's holding renders section 27–101–105 unconstitutional.

For these reasons, and those articulated by Justice Danielson, I dissent.

DANIELSON, J., joins in this dissent.