PAUL E. DANIELSON, Associate Justice | because I believe the majority has erroneously reversed the circuit court’s denial of Appellant Jimmy Paul Pickle’s motion to suppress, I must dissent. At the outset, I must note that the majority goes well beyond the scope of the actual issue on appeal in order to reverse the circuit court. The sole point raised by Pickle on appeal is whether “game wardens are subject to the same legal standards as all other law enforcement officers are bound to follow before detaining a citizen while engaged in a hunting activity.” Pickle argues that game wardens may not arbitrarily stop hunters in the absence of any probable cause or reasonable suspicion that a crime has been committed or that criminal activity is afoot and cites to the court’s decision in State v. Allen, 2013 Ark. 35, 425 S.W.3d 753, for support. In other words, according to Pickle, it was a violation of his constitutional rights for the officers to approach him and his hunting party to check their licenses, weapons, or any game they may have killed. After reading the majority opinion, I have no idea |2whether game wardens are allowed to conduct the routine compliance checks that I believe are necessary in order for them to carry out their official duties. Thus, because I am not entirely sure what the majority is actually holding, I will simply set forth what I believe is the appropriate analysis of Pickle’s argument on appeal. I simply cannot accept Pickle’s contention that Arkansas Game & Fish Commission (“AGFC”) game wardens should not be allowed to approach hunters or perform safety or compliance checks in the absence of probable cause or reasonable suspicion. Pickle asserts that the State’s claim that an intrusion is warranted because of the highly regulated nature of hunting can by equally applied to the activity of driving, which is also highly regulated, but his claim is not well-founded. It is true that the Supreme Court held that a random investigative stop of a vehicle is impermissible. See Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (holding that except in situations in which there is at least articu-lable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver’s license and the registration of the automobile are unreasonable under the Fourth Amendment). The Court balanced the permissibility of the law-enforcement intrusion on an individual’s Fourth Amendment interest against its promotion of legitimate governmental interest, holding that because of the alternative mechanisms available for enforcing traffic and vehicle-safety regulations, the incremental [^contribution to the governmental interest of highway safety gained from the random spot checks did not justify the practice under the Fourth Amendment. Id. When such a balance is considered in the instant scenario, the outcome is different. Yes, driving is a highly regulated activity. But, the nature of that activity lends itself to road blocks or check points that allow officers to check for impaired or unlicensed drivers or to check for insurance, as noted by the Court in Prouse. The activity of hunting does not lend itself to a streamlined type of compliance or safety check. There is simply not one way into the woods, and the game wardens can perform their job duties of regulating and managing the wildlife resources of this State only through random compliance checks with hunters. As Justice Black-mun noted in his concurrence in Prouse: The Court, ante, this page, carefully protects from the reach of its decision other less intrusive spot checks “that do not involve the unconstrained exercise of discretion.” The roadblock stop for all traffic is given as an example. I necessarily assume that the Court’s reservation also includes other not purely random stops (such as every 10th car to pass a given point) that equate with, but are less intrusive than, a 100% roadblock stop. And I would not regard the present case as a precedent that throws any constitutional shadow upon the necessarily somewhat individualized and perhaps largely random examinations by game wardens in the performance of their duties. In a situation of that type, it seems to me, the Court’s balancing process, and the value factors under consideration, would be quite different. Prouse, 440 U.S. at 663-64, 99 S.Ct. 1391 (Blackmun, J., concurring specially). I simply cannot ignore the duties of game wardens and the manner in which those duties must be carried out. Amendment 35 to the. Arkansas Constitution provides in relevant part as follows: The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, preservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission. Ark. Const, amend. 35, § 1. And, the authority to “regulate bag limits and the manner of taking game and fish and fur-bearing animals” and to “fix penalties for violations” has been vested in the AGFC by amendment 35, § 8, and is codified at Arkansas Code Annotated § 15- 41-203 (Repl. 2009). There are numerous AGFC guidelines related to the regulation of hunting and fishing, and the only way the AGFC can perform the duties related thereto is through compliance checks such as the one that occurred in this case. Thus, when the State’s interests in regulating the activity of hunting and maintaining its wildlife resources are balanced against the minimal intrusion occasioned by a compliance check, it cannot be said that such checks violate hunters’ constitutional rights'. A similar result was reached in Elzey v. State, 239 Ga.App. 47, 519 S.E.2d 751. (1999), wherein the Georgia Court of Appeals addressed the very issue of whether wildlife officers have a right to approach hunters to check their hunting licenses and identification in the absence of probable cause or reasonable suspicion. In determining that such officers could legitimately approach hunters, the court noted that the wildlife officers’ act of checking hunters was not analogous to that of a police officer conducting a roadblock. Id. The court reasoned that hunting in Georgia is a highly regulated activity that leads to a diminished expectation of privacy and cited the following notable language from a California appellate court decision: [i]n analyzing the reasonableness of the search (inspection) and seizure (detention) of hunters, the special nature of hunting is significant.... [H]unting is a highly regulated Inactivity. The wild game within a state belongs to the people in their collective, sovereign capacity; it is not the subject of private ownership, except insofar as the' people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation, or the public good. The high degree of regulation over the privilege of hunting, in turn, reduces a hunter’s reasonable expectation of privacy.... Given the highly regulated nature of hunting and the corresponding reduced expectation of privacy of hunters in their gear and their take from hunting, we find it is reasonable to detain hunters briefly, near hunting areas during hunting season, to inspect their licenses, tags, equipment, and any wildlife taken. Id. at 754 (quoting People v. Perez, 51 Cal.App.4th 1168, 59 Cal.Rptr.2d 596, 601 (3 Dist. 1996)) (citations and punctuation omitted). After discussing the holdings in Perez and other cases, the Georgia court announced that a wildlife officer may approach a hunter in a state-operated wildlife-management area to determine whether the hunter has the necessary license and permits and to ask him questions about his hunt, regardless of whether the officer has reason to suspect that the hunter has broken any laws. Id. In so ruling, the court also rejected any notion that the officers’ actions were somehow less valid because they did not stop every hunter they saw. Id. I believe that the Georgia court’s approach is well reasoned and strikes a fair balance between an individual’s rights under the Fourth Amendment and a state’s need to manage and oversee its natural resources. I think a similar approach should be adopted by this court instead of adopting a rule of law that will totally hamstring the game wardens of this state. Therefore, I respectfully dissent.