Rita Gruber, Judge, concurring. |8I agree with the majority’s decision to reverse this case because it was error for the circuit court to find that the checkpoint was constitutional. However, I respectfully concur because, in my view, the checkpoint was conducted according to a plan. The constitutionality of a checkpoint does not depend on a specific, written plan or program. Jacobs v. State, 2013 Ark. App. 177, at ¶ 7, 427 S.W.3d 83, 87. In Partee v. State, this court affirmed the denial of a motion to suppress. 2010 Ark. App. 805, 379 S.W.3d 82. The police did not have a written policy on checkpoints, did not account for how many cars were stopped, and did not publicize the checkpoint. Id. However, the checkpoint was visible based on the officers’ use of police lights and reflective safety vests; and the police department generated a memo detailing the checkpoint plan after the checkpoint took place. Id. Here, testimony from Senior Corporal Dwight Lee indicated that the identity of the troopers -and the presence of their vehicles were obvious due to their reflective vests, flashlights, and flashing blue lights. Corporal Lee also testified that a plan was followed and, similar to Partee, after the checkpoint took place, a written copy of the sobriety-checkpoint plan was generated and was “signed off on” by a supervisor. The ASP Sobriety Checkpoint Plan, which was generated following the checkpoint and signed by Sergeant Jason W. Aaron is included in the State’s supplemental addendum. The Sobriety Checkpoint Plan specifically states that officers must advise the drivers that they have entered an Arkansas State Police sobriety checkpoint, check the vehicle operator’s license and registration, and direct motorists suspected of being impaired to 13move their vehicles to a designated pull-off area. The plan states that officers must designate a safe site with ample space for detained motorists, use sufficient lighting, wear an Arkansas State Police high-visibility reflective vest, avoid lane blockage or potential traffic backup for prolonged periods of time, and comply with the Arkansas State Police Policy and Procedures Manual. Therefore, I cannot say that the checkpoint was not conducted according to a plan. As stated by the majority, these are some of the factors to be considered in applying the balancing ■ analysis: the supervision of the individual officers in the field, the limited discretion of the officers in stopping vehicles, the amount of interference with legitimate traffic, the subjective intrusion on the part of the travelers, the supervisory control over the operation, and the availability of a less intrusive means of promoting the legitimate government interest. Partee, 2010 Ark. App. 805, at ¶ 5-6, 379 S.W.3d at 85. The checkpoint took place on the Exit 11 exit ramp on Interstate 540. Corporal Lee testified that every vehicle coming off the ramp was stopped and checked “unless traffic [got] backed up.” Corporal Lee described himself as an “officer in the field” and testified that the “traffic flow” was left to the discretion of the officer in the field. He testified that it is “the officer in the field using his discretion as to what would happen on the roadblock” and that a supervisor is called only if there is “something major like a collision or chase.” This means that whether the stop was made depended only on the law-enforcement officer’s discretion based on his or her subjective assessment of the level of traffic. “[T]he Fourth Amendment requires objective facts supporting the stop or a plan embodying explicit, neutral limitations.” State v. Allen, 2013 Ark. 35, at 5, 425 S.W.3d 753, 757; see also Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). An individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. Allen, 2013 Ark, 35, at 5, 425 S.W.3d at 757. Thus, in my view, although the checkpoint was conducted according to a plan, the unfettered discretion of the officers was such that the plan did not embody the explicit and neutral limitations required by the Fourth Amendment. I would reverse based on the lack of supervisory control, the interference with legitimate traffic, and the level of discretion given to the officers in the field. Therefore. I concur.